**James D. WHITMAN and Elaine L. Whitman, Appellants– Plaintiffs,**

v.

**Edward J. DENZIK and Robin L. Denzik, Appellees– Defendants.**

No. 31A05–0703–CV–166.

Court of Appeals of Indiana.

March 12, 2008.

Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, IN, Gregory Martin Reger, Lorch & Naville, LLC, New Albany, IN, Attorneys for Appellants.

Jennifer Kraft Kuchle, Young, Lind, Endres & Kraft, New Albany, IN, Attorney for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

James D. Whitman and Elaine L. Whitman appeal the order granting Edward J. Denzik and Robin L. Denzik's cross-motion for summary judgment, quieting title in favor of the Denziks, and granting the Denziks a prescriptive easement across the Whitmans' land for purposes of ingress and egress. We affirm.

### Issue

The Whitmans raise one issue, which we restate as whether the trial court erred in granting summary judgment in favor of the Denziks.

### Facts and Procedural History

The facts most favorable to the Whitmans, the non-moving party, follow.[1] On May 17, 2001, the Whitmans acquired a 20.62–acre tract of real estate in Harrison County ("the Whitman Property") from Dudley and Lora Taylor, who had owned it since the 1960s or 1970s. On the northeast border of the Whitman Property, there is a 37.92–acre tract of real estate ("the Denzik Property"). Corrine Headrick and her husband Isaac, now deceased, owned the Denzik Property from October 14, 1958, until August 13, 2004, when the Denziks acquired it.

A gravel road known as Headrick Lane, previously owned by the Headricks and currently owned by the Denziks, runs along the eastern borders of both the Denzik and Whitman Properties. The Denziks use Headrick Lane, as did the Headricks, to enter and exit the Denzik Property. A portion of Headrick Lane approximately eighteen feet wide and forty to fifty feet long crosses over the northeastern corner of the Whitman Property ("the Disputed

1. The Whitmans are appealing the trial court's grant of the Denziks' cross-motion for summary judgment and not the denial of their summary judgment motion.

Corner"). The Whitmans do not use Headrick Lane to access their property and, other than the Disputed Corner, have no ownership interest in Headrick Lane.

In April 2005, the first half of a modular home purchased by the Denziks was hauled up Headrick Lane and placed on the Denzik Property. When the hauler returned with the second half of the home, the Whitmans had blocked the Disputed Corner with automobiles.[2] The Whitmans refused to permit the second half of the home to be taken on the Disputed Corner. The Denziks eventually used a crane to lift the modular home over the Disputed Corner.

On July 6, 2005, the Whitmans filed a complaint against the Denziks to quiet title over the Disputed Corner, seeking damages resulting from the Denziks' alleged trespass, and requesting injunctive relief to maintain the status quo and a jury trial. Appellants' App. at 13–15. The Whitmans then filed a motion for summary judgment on their complaint. The Denziks filed a cross-motion for summary judgment, arguing that they had a prescriptive easement to use the Disputed Corner. On January 24, 2007, the trial court held a hearing on the summary judgment motions. On February 7, 2007, the trial court entered an order denying the Whitmans' motion for summary judgment and granting the Denziks' cross-motion for summary judgment.

The order entered judgment "quieting the title of [the Denziks] and granting [the Denziks] a prescriptive easement across the land of [the Whitmans] for the purposes of ingress and egress along a currently existing roadway known as Headrick Lane." *Id.* at 7. This appeal ensued. Additional facts will be provided.

### Discussion and Decision

The Whitmans contend that the trial court erred in granting the Denziks' cross-motion for summary judgment. Our standard of review is well settled.

Summary judgment is appropriate only where the designated evidentiary matter shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. When reviewing a grant of a motion for summary judgment, we stand in the shoes of the trial court. Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the burden falls upon the non-moving party to come forward with contrary evidence. The non-moving party may not rest upon the pleadings but must instead set forth specific facts, using supporting materials contemplated under Trial Rule 56, which show the existence of a genuine issue for trial. The party appealing the grant of summary judgment bears the burden of

**2.** In their statement of the facts, the Denziks state that the "Whitmans had parked cars in the middle of Headrick Lane at the Disputed Corner." Appellees' Br. at 6. In their reply brief, the Whitmans take issue with this statement, stating, "The Whitmans parked cars only on their property, and [the hauler] did not testify that they parked them right in the middle of Headrick Lane." Appellants' Reply Br. at 8. We think it curious that the Whitmans would claim that the Disputed Corner is their property and at the same time assert that they did not park in the middle of the Disputed Corner because they only parked the cars on their property. In any event, this debate is irrelevant to the arguments the parties present on appeal. Unfortunately, there were many such detours in the parties' briefs, especially in the appellants' reply brief, the first eleven pages of which are dedicated to assertions that the Denziks' statement of the case, statement of the facts, and summary of the argument were argumentative. Yet, the Whitmans never requested that we strike any portion of the Denziks' brief. Such discussions do little to assist us in reaching the proper resolution to the issues presented.

persuading this court that the trial court erred, but we still carefully scrutinize the entry of summary judgment to ensure that the non-prevailing party was not denied its day in court. We do not weigh the evidence but rather consider the facts in the light most favorable to the nonmoving party. We may sustain the judgment upon any theory supported by the designated evidence. *Auburn Cordage, Inc. v. Revocable Trust Agreement of Treadwell,* 848 N.E.2d 738, 747 (Ind.Ct.App.2006) (citations omitted). In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760, 767 (Ind.Ct.App. 2003) (citation and quotation marks omitted) (alterations in *Meyer*).

■ Specifically, the Whitmans challenge the trial court's grant to the Denziks of a prescriptive easement over the Disputed Corner. Indiana Code Section 32–23–1–1 provides that an easement "from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years." The Denziks have not used the Disputed Corner for twenty years, and therefore the Denziks must tack their use of the Disputed Corner on to the Headricks' use to satisfy the twenty-year requirement. *See Corp. for Gen'l Trade v. Sears,* 780 N.E.2d 405, 410 (Ind.Ct.App.2002) (noting that twenty-year requirement may be satisfied by "tacking" present claimant's use of easement to continuous use by predecessors in title).

■ We further observe that once a prescriptive easement has been established, the right vests by operation of law.

*Downing v. Owens,* 809 N.E.2d 444, 452 (Ind.Ct.App.2004), *trans. denied.* However, prescriptive easements generally " 'are not favored in the law.' " *Wilfong v. Cessna Corp.,* 838 N.E.2d 403, 405 (Ind.2005) (quoting *Carnahan v. Moriah Prop. Owners Ass'n, Inc.,* 716 N.E.2d 437, 441 (Ind. 1999)). "The existence or non existence of a prescriptive easement is a question of fact." *Ballard v. Harman,* 737 N.E.2d 411, 418 (Ind.Ct.App.2000). A party claiming the existence of a prescriptive easement must provide evidence showing " 'an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right.' " *Wilfong,* 838 N.E.2d at 406 (quoting *Carnahan,* 716 N.E.2d at 441). However, in *Fraley v. Minger,* 829 N.E.2d 476, 486 (Ind.2005), our supreme court reformulated the elements of adverse possession. These new elements apply to establishing prescriptive easements, except for those differences required by the differences between fee interests and easements. *Wilfong,* 838 N.E.2d at 406. Therefore, a party claiming the existence of a prescriptive easement "must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration." *Id.* Further, the party asserting the prescriptive title has the burden of establishing each element as a necessary, independent, ultimate fact, and the failure to find any one of the elements is fatal, for such failure to find is construed as a finding against it. *Id.* at 405.

■ The Whitmans aver that the Denziks' designated evidence fails to establish that the Headricks' use of the Disputed Corner was adverse, and even if their evidence does so establish, the Whitmans' designated evidence establishes that there is a genuine issue as to whether the Headricks' use was permissive. In addressing these arguments, we observe that the former element of adversity equates to

the new element of "intent," and to some extent "notice." *Id.* at 406.[3] In the context of adverse possession, our supreme court stated that to satisfy the element of intent, the claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner. *Fraley,* 829 N.E.2d at 482. Applying this principle to the element of intent in the context of establishing a prescriptive easement, the claimant must demonstrate intent to claim the right to use the tract for a specific purpose. *See* BLACK'S LAW DICTIONARY 548 (8th ed.1999) (defining easement as "[a]n interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)"). With respect to notice, we discern no difference between establishing adverse possession and a prescriptive easement that would require modification of the *Fraley* reformulation. To satisfy the element of notice, the claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent to use and control the tract. *Fraley,* 829 N.E.2d at 482. Finally, we are guided by the following proposition upon which our supreme court relied in reformulating the elements of adverse possession:

> "An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, *exercising those acts of ownership usually practiced by owners of such land, and using it for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims,* is sufficient to make the possession adverse."

*Id.* at 485 (quoting *Worthley v. Burbanks,* 146 Ind. 534, 543, 45 N.E. 779, 782 (1897) (quoting *Collett v. Board,* 119 Ind. 27, 34, 21 N.E. 329, 331 (1889))) (emphasis added in *Worthley* ).

Regarding the elements of intent and notice, we observe that the Denziks' designated evidence included the deposition of Mrs. Headrick, which contained the following testimony:

> Q: I'd like to talk to you about an area of property that we have come to know in the case as a disputed corner of property. Are you familiar with what I am talking about when I say this corner?
>
> A: Yes, I am.
>
> Q: Okay. What does that area mean to you?
>
> A: It means that there was a road there that was grandfathered in many, many, many years ago when we bought the property, and it was just a little corner of the Whitman property there, the Taylor property at that time, and just run out onto the road just a little bit, and it was to be—not to be bothered because it was grandfathered in many, many, many years ago.
>
> . . . .
>
> Q: Okay, and ... And what did you mean by the term "grandfathered in"?
>
> A: Well, that's what—we had it surveyed and that's what they told us when we bought the property, that that road could never be cut off on the corner because that road was put there—that

---

**3.** *See also Fraley,* 829 N.E.2d at 486 (noting that "intent" reflected former elements of "claim of right," "exclusive," "hostile," and "adverse," and that "notice" reflected the former "visible," "open," "notorious," and in some ways "hostile" elements of adverse possession).

road was put there many, many, many years ago.

Appellants' App. at 275.

The Whitmans argue that Mrs. Headrick's testimony fails to establish adverse use because she did not identify on a plat map the property to which she was referring and she did not state *who* informed her and her husband that the Disputed Corner was "grandfathered in." Our review of Mrs. Headrick's deposition reveals that she adequately identified the subject property as the Disputed Corner.[4] Further, we think it immaterial that Mrs. Headrick did not identify who said that the Disputed Corner was "grandfathered in." Her testimony constitutes relevant evidence that the Headricks believed that they had the right to use the Disputed Corner and did so. As such, her testimony establishes the element of intent.

Further evidence establishing the elements of intent, notice, and control is set forth in Mrs. Headrick's deposition:

Q: And with respect to that, when we talked, from 1958 up until the time that you sold your property to Mr. and Mrs. Denzik, you used that roadway from Corydon Ridge Road [5] all the way back to your property, did you not?

A: Yes.

Q: And you used that road as it exists today with the curb, and again, Mr. Reger [6] has referred to it as the disputed corner, didn't you?

A: Yes.

Q: And Mr. Reger also asked you if the school bus went back there.[7] But, that's not the only vehicle that traveled

to and from your residence out to Corydon Ridge Road, was it?

A: No.

Q: In fact, you used that roadway every day to get in and out of your

A: Yes, I did.

Q: However many trips were necessary, that's the means to [enter] and exit [ ] your real estate, wasn't it?

A: Yes.

Q: You did that openly?

A: Yes.

Q: You didn't wait till dark and the Whitmans went to bed and secretly went out?

A: No.

Q: You did it continuously from 1958 up until the time that you sold the property?

A: Yes.

Q: Did you ever seek permission or consent from Whitmans or anyone else to use that roadway?

A: No.

*Id.* at 279. We conclude that this testimony establishes a prima facie showing that the Headricks obtained a prescriptive easement over the Disputed Corner. *See Fraley,* 829 N.E.2d at 485; *see also Pugh v. Conway,* 157 Ind.App. 44, 49–50, 299 N.E.2d 214, 218 (1973) ("Once open and continuous use of another's land commences with knowledge on part of the owner, such use is presumed to be adverse to the owner.").

However, the Whitmans claim that there was a dispute between the Taylors and the

4. We observe that this case does not involve another property corner that could be confused with the Disputed Corner.

5. Corydon Ridge Road is a public road running along the southern boundary of the Whitman Property.

6. Mr. Reger represented the Whitmans at the summary judgment hearing.

7. Mrs. Headrick drove the school bus.

Headricks sometime during the 1960s and 1970s, which severs the Headricks' adverse use claim, and that after this dispute the Headricks used the Disputed Corner with the Taylors' implied permission.[8] We disagree. Mrs. Headrick testified to this dispute in her affidavit as follows:

> 5. The only issue arising with the location of the road occurred in the late 60s or early 70s at which time the road was blocked with a post (in the middle of the curve of the road) placed by [the Taylors].

> 6. That the post was removed shortly after it was installed through contact with law enforcement officers, and was never put back and the use of the roadway continued openly, continuously, exclusively, adversely, and notoriously for more than forty-four (44) years.

Appellees' App. at 35–36.

We observe that Mrs. Headrick stated that the post was removed "through contact with law enforcement officers, and was never put back[.]" *Id.* at 36. Combined with Mrs. Headrick's testimony that neither she nor her husband ever asked for permission to use the Disputed Corner, the designated evidence establishes the elements of intent, notice, and control. Specifically, the evidence shows that the Headricks demonstrated their intent to claim the right to use the Disputed Corner and that notice was provided to the Taylors of the Headricks' intent and exclusive control.[9]

The Whitmans next argue that the Denziks' designated evidence supports an inference that the Taylors impliedly permitted the Headricks to use the Disputed Corner. Specifically, they aver that the relationship between the Taylors and the Headricks was cordial after the dispute and that this cordial relationship supports an inference of permissive use. To buttress their argument, the Whitmans cite *Searcy v. LaGrotte*, 175 Ind.App. 498, 372 N.E.2d 755 (1978). In *Searcy*, two sisters owned parcels of land adjacent to one another beginning in 1925. A dirt drive connected the two parcels, and both sisters used the drive without any formal agreement. The sisters sold their parcels to the Searcy and LaGrotte families in 1959 and 1960 respectively. A disagreement arose thereafter between Searcy and LaGrotte regarding the use of the drive. Searcy claimed a prescriptive easement over the drive. We "recognized that a presumption of prescriptive right may be defeated by appealing to facts and circumstances for the purpose of showing that the use was not under claim of right." *Id.* at 501–02, 372 N.E.2d at 757 (citation and quotation marks omitted). We then noted that the evidence established that the sisters farmed together and stored their equipment in the same location. Additionally, one sister parked her car regularly in the other's barn and kept cattle on her property. Thus, the sisters enjoyed a friendly relationship, which supported an inference that use of the drive was permissive. *Id.* at 502, 372 N.E.2d at 757. Further, a

---

8. The Whitmans argue that there are facts in dispute as to when adverse use began. Appellants' Reply Br. at 21. However, the parties focus their arguments on the date that the Headricks bought the Denzik Property in 1958 and the date that Mr. Taylor removed the post from the Disputed Corner sometime in the 1960s or 1970s. The twenty-year requirement is met regardless of which date is chosen.

9. The Whitmans also contend that "there is a genuine issue of material fact precluding summary judgment as a matter of law as to legal title of the Disputed Corner by deed." Appellants' Br. at 36. We disagree. The Denziks do not claim to own the Disputed Corner by deed. The Denziks only assert the right to cross the Disputed Corner by prescriptive easement. Ownership by deed of the Disputed Corner is therefore irrelevant.

daughter of one of the sisters testified that both sisters used the dirt drive and barn lot without consideration of ownership, which effectively rebutted the presumption that the use of the drive was under claim of right. *Id.*, 372 N.E.2d at 757. We therefore held that Searcy failed to establish the existence of a prescriptive easement. *Id.*, 372 N.E.2d at 757.

Turning to the case at bar, the Headricks and the Taylors simply did not share the kind of intimate, intertwined relationship exhibited by the sisters in *Searcy*. The record before us reveals that Mrs. Headrick testified that she did not know Mr. Taylor personally, although she had talked with him. Appellants' App. at 277. Mrs. Headrick worked with Mrs. Taylor for five years at Keller Manufacturing, where the two generally had pleasant conversations during their breaks and did not have any fights. *Id.* On an infrequent basis, Mrs. Headrick would see Mrs. Taylor walking along Corydon Ridge Road, and they would speak. *Id.* at 278. Accordingly, while the evidence indicates that the Taylors and the Headricks did not have an unfriendly relationship, it does not establish the level of friendliness and intimacy that would support an inference of permissive use under *Searcy*. In other words, the facts and circumstances do not demonstrate that the Headricks used the Disputed Corner with the understanding that they did so with the Taylors' permission.

Evidence to support an inference of permissive use was also found in *Wilfong*, 838 N.E.2d 403. In that case, Paul Wilfong claimed to have a prescriptive easement permitting him to use a private roadway across Cessna Corporation's property. Our supreme court discussed *Searcy* at length and found that similar evidence of goodwill had existed between the Cessnas and the Inmans, Wilfong's predecessors in interest. The supreme court noted that the testimony of Wilfong's witnesses reflected a very cordial relationship: "For example, Paula Trevithick, the daughter of Donald Cessna, and her mother, Priscilla Cessna, both testified to spending most holidays with the Inman family and both women had had their marriage ceremonies performed by Leroy Inman." *Id.* at 407. Here, the designated evidence does not show a comparable relationship between the Headricks and the Taylors. We conclude that the polite relationship between the Headricks and the Taylors does not establish that a genuine issue of material fact exists as to permissive use. Accordingly, the Denziks' designated evidence establishes a rebuttable presumption that the Headricks' use was adverse. *See Searcy*, 175 Ind.App. at 501, 372 N.E.2d at 757 (once open and continuous use of another's land commences with knowledge on the part of the servient owner, a rebuttable presumption arises that such use is adverse).

The Whitmans argue that their designated evidence successfully rebuts that presumption. They contend that Mr. Taylor's affidavit establishes a genuine issue as to whether he gave express permission to the Headricks to use the Disputed Corner. Appellants' Br. at 38. Mr. Taylor's affidavit includes the following relevant statements:

4. When I owned the property in dispute, I allowed Corrine Headrick to drive her school bus on the road which travels through the real estate.

5. I had a discussion with Isaac Headrick regarding the use of the disputed corner and in that discussion he acknowledged my superior ownership rights.

6. After this discussion with Isaac, rather than provoking a confrontation and in light of our cordial relationship, I

allowed the Headricks to continue using the disputed corner.

Appellants' App. at 301.

However, the Denziks observe that the "Whitmans openly admitted in their argument at the summary judgment hearing that *Taylors gave no express permission to Headricks to use the Disputed Corner.*" Appellees' Br. at 20 (emphasis in brief). Our review of the record reveals that Whitmans' counsel made the following statement at the summary judgment hearing: "While this use [of the road for general ingress and egress] *was not expressly given by Mr. Dudley Taylor, he said in light of the relationship and friendliness between them, he allowed them to do that without objection[.]*" Appellees' App. at 124; Tr. at 14 (emphasis added). The Whitmans are judicially estopped from asserting a contrary position on appeal. *See Am. Family Mut. Ins. Co. v. Ginther,* 803 N.E.2d 224, 234 (Ind.Ct.App.2004) ("[J]udicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted."), *trans. denied.*

 At this point, we observe that several legal principles may be gleaned from the facts of *Searcy* and *Wilfong.* To support a finding of permissive use, the servient owner must establish that he or she actually communicated, either explicitly or implicitly, to the adverse claimant that he or she was allowing the adverse claimant to use the disputed property at his or her sufferance. In this case, Mr. Taylor's affidavit does not establish anything other than his state of mind, which is insufficient to demonstrate permissive use.[10] Likewise, an adverse claimant must produce evidence that he or she actually communicated, either explicitly or implicitly, to the servient owner that he or she was using the disputed property under a claim of right; mere evidence of the adverse claimant's state of mind would be insufficient to carry this burden.

In sum, the Denziks established that no genuine issue of material fact exists as to the existence of the prescriptive easement, and the Whitmans failed to designate any evidence precluding entry of summary judgment in favor of the Denziks. Therefore, we affirm.

Affirmed.

BAILEY, J., and NAJAM, J., concur.

---

**10.** Regarding Mr. Taylor's statement that Mr. Headrick "acknowledged my superior ownership rights[,]" Appellants' App. at 301, the Whitmans contend that this statement gives rise to an inference that Mr. Taylor and Mr. Headrick "reached an agreement, whereby, upon acknowledging this Disputed Corner was the property of the Taylors, Mr. Taylor continued to allow the Headricks to use the same because they were his neighbors and did not want to sour neighborly relations." Appellants' Reply Br. at 18. We cannot agree. The Denziks were not claiming ownership of the Disputed Corner by adverse possession. The Denziks agreed that the Taylors' ownership rights to the Disputed Corner were superior to theirs. Rather, the issue was whether the Denziks had a right to use the Disputed Corner based on the existence of a prescriptive easement. Taylor's statement regarding superior ownership is simply irrelevant to the existence of a prescriptive easement over the Disputed Corner for purposes of ingress and egress.