ATTORNEYS FOR APPELLANT

Michael L. Muenich

Michael S. Vass

Highland, Indiana

     

ATTORNEY FOR APPELLEE PARKER

Timothy R. Sendak

Crown Point, Indiana

IN THE

SUPREME COURT OF INDIANA

DANIEL G. NELSON,            )

                 )

Appellant (Plaintiff below), )

) 

v. ) Indiana Supreme Court

 ) Cause No. 45S03-9703-CV-225

IRENE PARKER,     ) 

) Indiana Court of Appeals

Appellee (Defendant/Cross- ) Cause No. 45A03-9512-CV-428

Petitioner below), )

) 

v. )

)

NBD BANK, N.A. and DONALD HAWKINS, )

)

Appellees (Cross-Defendants )

below). )

 

­

APPEAL FROM THE LAKE SUPERIOR COURT

The Honorable Jeffery J. Dywan, Special Judge

Cause No. 45D05-9409-CP-1735

­

ON PETITION TO TRANSFER

BOEHM, Justice.

The issue in this case is whether a deed “subject to a life estate” in a third person validly creates that life estate.  We hold that it does and overrule earlier authority to the contrary.

Factual and Procedural Background

Russell Nelson died in August 1994, three months after executing a warranty deed containing the following language:

Convey and warrant to

RUSSELL H. NELSON, DURING HIS LIFETIME, AND UPON HIS DEATH, SHALL PASS TO DANIEL NELSON.

SUBJECT TO: EASEMENTS, LIENS, ENCUMBRANCES, 
LIFE ESTATE IN IRENE PARKER
, AND RESTRICTIONS OF RECORD.

(Capital letters and underscoring in original.)  Daniel was Russell’s son.  Irene Parker had lived with Russell for thirteen years prior to his death and remained on the property after he died.  In September 1994 Daniel initiated this action to eject Parker, asserting that the deed did not effectively grant Parker a life estate.  On cross-motions for summary judgment, the trial court agreed with Parker that she held a valid life estate and granted her motion for summary judgment.  The court concluded that the object of deed construction is to ascertain the intent of the parties.  Looking at the language of the deed as a whole, the court found that Russell intended to create a life estate in Parker.  Daniel appealed.

In the trial court, both parties based their contention on their view of the grantor’s intent.  In the Court of Appeals Daniel made a new argument.  He characterized the “subject to a life estate” language as improperly “reserving” an interest in a stranger to the deed.  A “reservation” is “[a] clause in a deed or other instrument of conveyance by which the grantor creates, and reserves to himself, some right, interest, or profit in the estate granted, which had no previous existence as such, but is first called into being by the instrument reserving it; such as rent, or an easement.”  
Black’s Law Dictionary 1307
 (6th ed. 1990).  As the definition suggests, at common law a grantor could reserve an interest only for the grantor, but not for a third person, or “stranger” to the deed.
(footnote: 1)  Words of reservation were not considered to be words of “grant” and so could not create an interest in another.  Daniel cited this Court’s decision in 
Ogle v. Barker
, 224 Ind. 489, 68 N.E.2d 550 (1946) which upheld this common law rule.  Because Parker was a “stranger to the deed,” Daniel argued, the reservation of a life estate to her was void.

The Court of Appeals accepted Daniel’s characterization of the “subject to” language as a reservation but declined to follow the common law rule.  Rather, citing 
Brown v. Penn Cent. Corp.
, 510 N.E.2d 641, 643 (Ind. 1987) and 
Kirtley v. McClelland
, 562 N.E.2d 27, 36 (Ind. Ct. App. 1990), the court found the grantor’s intent to be controlling.  In affirming judgment for Parker, the court found that Russell’s intent to create a life estate in Parker was clear from the deed’s language and the surrounding circumstances at the time of the deed’s execution.  
Nelson v. Parker
, 670 N.E.2d 962, 963-64 (Ind. Ct. App. 1996).  More importantly, the court analyzed and rejected the rule upheld in 
Ogle
 that a grantor cannot by reservation convey a life estate in real property to a party who is a stranger to the deed.  
Id.
 at 964.  The court noted that the rule’s validity had already been questioned in 
Brademas v. Hartwig
, 175 Ind. App. 4, 369 N.E.2d 954 (1977).  In 
Brademas
, the court followed § 472 of the Restatement of Property
(footnote: 2) and held that a reservation in a deed of an easement to a third party was valid when the intention of the parties was “patently evident.”  
Id.
 at 7-8, 369 N.E.2d at 956-57.  In rejecting Daniel’s argument, the Court of Appeals also commented that the common law rule was derived from efforts, dating back to feudal times, to limit conveyance by deed as a substitute for livery by seisin.  
Nelson
, 670 N.E.2d at 964 (citing 
Willard v. First Church of Christ, Scientist, Pacifica
, 498 P.2d 987, 989 (Cal. 1972) (explaining the history of the rule and concluding that “it is clearly an inapposite feudal shackle today.”)).  Noting that other jurisdictions had also decided against the wisdom of the rule, 
id.
 at 964 n.4, the court held that Russell’s intent to create a life estate in Parker trumped application of the common law rule.  We granted transfer because of the apparent conflict between the Court of Appeals opinion and the decision of this Court in 
Ogle
.

Discussion

There are no facts in dispute.  In view of the plain language of the deed, the fact that the life estate language was underscored, and the circumstance that Parker had lived in the house as Russell’s companion for thirteen years, we agree with the trial court and the Court of Appeals that Russell’s intent to create a life estate in Parker is clearly reflected in this record.  The question then becomes whether stare decisis requires adherence to 
Ogle
.

Although it is arguable whether the “subject to” language created a “reservation” in the first place, we agree with the Court of Appeals that the common law rule upheld in 
Ogle
 serves no practical purpose today.  It is a trap for the unwary and if enforced serves only to frustrate the intent of the grantor.  Inadvertent use of the word “reservation,” or other clumsy effort to grant an interest in land should not frustrate an otherwise clear intent based on mindless adherence to a formal and outdated rule.  As noted by the Court of Appeals, our decision to override the questionable wisdom of this rule is in line with that of several other jurisdictions, as well as scholarly opinion.  
Aszmus v. Nelson
, 743 P.2d 377 (Alaska 1987); 
Borough of Wildwood Crest v. Smith
, 509 A.2d 252 (N.J. Super. Ct. App. Div. 1986), 
cert. denied
, 526 A.2d 139 (N.J. 1986); 
Simpson v. Kistler Inv. Co.
, 713 P.2d 751 (Wyo. 1986); 
Malloy v. Boettcher
, 334 N.W.2d 8 (N.D. 1983); 
Willard
, 498 P.2d at 987; 
Townsend v. Cable
, 378 S.W.2d 806 (Ky. 1964); 
Zurn Indus. Inc. v. Lawyers Title Ins. Corp.
, 514 N.E.2d 447 (Ohio Ct. App. 1986);
 14 
Powell on Real Property
 Chap. 81A 119-122, 122, ¶ 899[3][g] (1997) (asking why it is necessary to dwell on “the unfortunate use of a particular word.”); 
Roger A. Cunningham et al., The Law of Property 
719 (1984) (the rule has been “increasingly discredited”); W.W. Allen, Annotation, 
Reservation or Exception in Deed in Favor of Stranger
, 88 
A.L.R. 2
d 1199, 1202 (1963 & Supp. 1993) (intent ought to be favored over use of words reservation or exception).

Not all courts agree.  
See
 
generally
 Allen, 88 
A.L.R.
 2d at 1199.  
Estate of Thomson v. Wade
, 509 N.E.2d 309 (N.Y. 1987) appears to be the case most frequently cited in support of the common law rule.  In that case, the New York Court of Appeals upheld the rule, noting that any frustration it caused to the grantor’s intent could easily be avoided by a direct conveyance.  A grantor could first convey an easement to a “third person” and then convey the fee, literally “subject to” an already existing easement.  Although this procedure avoids frustrating the grantor’s intent, there is no reason to force the grantor to do in two steps what could otherwise be done in one.  Further, as the Indiana Court of Appeals remarked in 
Brademas
, the 
Ogle
 rule did not prevent the grantor from first reserving to himself then conveying the reserved interest to a third party.
(footnote: 3)  
Brademas
, 175 Ind. App. at 8, 369 N.E.2d at 957.  Thus, under 
Ogle
, Russell could have “reserved” a life estate to himself, and then simply conveyed it to Parker without encountering any legal impediment.  The sum of this is that the rule functions solely as an obstacle to conveying interests in land, but serves no purpose.  This is not a function consistent with our modern preference for effecting the grantor’s clear intent. 

Estate of Thomson
 concluded that the common law rule protects the rights of bona fide purchasers and avoids conflicts of ownership.  
Estate of Thomson
, 509 N.E.2d at 310.  But the court did not explain how the rule served these ends.  In this case, Daniel’s interest appears from the deed to be a fee simple interest subject to a life estate.  We see no reason and no policy to be furthered by imposing an artificial and unintended result on the parties.  A bona fide purchaser of an identical interest would have reasonably believed that the interest was, as the deed said, “subject to” a life estate.  Any examiner of an abstract or title policy for this property is fairly notified of Parker’s interest.  Thus, as the 
Willard
 court noted, a purchaser faced with this language would assume it to be at least potentially valid and pay less for property erroneously encumbered by “reservation” or by “subject to” language, only to receive a windfall if the interest is later deemed void because of the common law rule.  
Willard
, 498 P.2d at 989-90.  In addition to working this sort of inequitable result generally, the rule would work an unfair, if not inequitable, result in this case.  Daniel presumably knew the contents of the deed and knew of Russell’s intentions when the deed was drafted in May, but did not contest Parker’s interest until after the alleged error became uncorrectable by reason of Russell’s death in August.  As to the concern expressed in 
Estate of Thomson
 for conflicts of ownership, the rule as relied upon by Daniel fueled an otherwise nonexistent conflict.

Finally, 
Estate of Thomson
 relied on the public policy favoring certainty in the area of property law: “[where] settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a ‘correct’ rule of law.” 
Estate of Thomson
, 509 N.E.2d at 310 (internal quotation marks and citation omitted).  We recognize the importance of settled rules in property law.  Stability is desirable so planners can predict the outcome of the use of formulaic language and rely on achieving the conventional result.  But it is hard to imagine who reasonably and in good faith could rely on a failed reservation clause to obliterate an apparently intended interest.  This Court is not persuaded that the public policy of promoting settled rules requires adherence to a vestige of ancient conveyancing law that has only pernicious effects.  To the extent 
Ogle
 holds otherwise, it is overruled.
(footnote: 4)  

Conclusion

The trial court’s grant of summary judgment in favor of Parker is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.

FOOTNOTES
1: At common law, a “reservation” is distinct from an “exception.”  A reservation carves out a new interest in the property for the grantor, for example a life estate or an easement.  An exception excludes part of the property from the conveyance, retaining the interest for the grantor, for example, a conveyance of Blackacre 
except for
 30 acres on the northeast corner.  In modern cases, the terms “reservation” and “exception” have become interchangeable, with no penalty for incorrect usage.  
Roger A. Cunningham et al., The Law of Property 718 & 
n.55
 (1984).

2: Section 472 of the Restatement provides: “By a single instrument of conveyance, there may be created an estate in land in one person and an easement in another.”  
Restatement of Property
 § 472 (1944).  Comment b to this section states that:

an easement may be created in C by a deed by A which purports to convey Blackacre to B in fee reserving an easement to C.  If, in other respects, the necessary formalities for the creation of an easement are complied with, such a reservation operates as an effective conveyance to the person in whose favor the reservation is, in terms, made.

3: The 
Ogle
 court also noted that in other jurisdictions an exception to the rule had been carved out to permit a grantor to reserve a life estate in favor of his or her spouse if the grantor’s intent was clear.  Although it was not persuaded by these cases, the Court did distinguish them on the facts, noting that the intent to create a joint life estate -- the reservation at issue -- was not clear on the facts before it.  
Ogle
, 224 Ind. at 499-500, 68 N.E.2d at 555.

4: Daniel argues that 
Brademas
, and other cases circumventing or rejecting the common law rule, primarily concerned easements and not life estates and that the rule should still apply to life estates.  The distinction is relevant, he contends, because conveyance of an easement does not create an ownership interest in the property whereas a life estate does. Although this may be true, it is of little significance.  All the reasons for rejecting the rule as applied to easements are of equal validity as applied to life estates.  The grantor’s intent remains the pivotal concern.  Few modern courts have made much of this distinction.  
See
 
Restatement of Property
 § 472 cmt. b (1944) (“conveyances may be made of a life estate to one and of a remainder in fee to another.”).  Indeed, early exceptions to the rule were made in favor of recognizing life estates “reserved” to the grantor’s spouse.  
Saunders v. Saunders
, 26 N.E.2d 126 (Ill. 1940); 
Hall v. Meade
, 51 S.W.2d 974 (Ky. 1932).