Ronald N. **RENNAKER**, Patricia A. Rennaker, Richard W. Pape, Jr., Karen M. Pape and Arthur L. Ramsey, **Appellants–Defendants,**

v.

Raymond D. **GLEASON,** **Appellee–Plaintiff.**

No. 92A03–0808–CV–412.

Court of Appeals of Indiana.

Sept. 23, 2009.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan LLP, Syracuse, IN, Attorneys for Appellants.

Patrick G. Murphy, William D. Swift, Blaine R. Dart, Fort Wayne, IN, Attorneys for Appellee.

**OPINION**

BAILEY, Judge.

**Case Summary**

Appellants–Defendants Ronald and Patricia Rennaker, Richard and Karen Pape and Arthur Ramsey (collectively, Appellants) appeal the trial court's declaratory judgment and imposition of a permanent injunction in favor of Appellee–Plaintiff Raymond Gleason regarding an easement in a residential addition on Blue Lake. We affirm.

**Issues**

■ The Appellants raise numerous issues on appeal that we consolidate and restate as:

I. Whether the trial court erred in concluding that a forty-foot driving easement exists by virtue of the language in deeds[1] conveying the lots along Blue Lake; and

II. Whether the permanent injunction requiring the removal of and prohibiting objects obstructing the easement is vague and overbroad.

**Facts and Procedural History**

Prior to 1922, Frank Harrold owned a tract of undeveloped land along Blue Lake in Whitley County, Indiana. On October 16, 1922, a portion of that tract was platted as Harrold's First Addition, consisting of thirty-five lots. Between Lots 8 and 9, the plat indicated a "30' Drive." Appellant's Appendix at 345. All but two of the lots were forty-five feet wide, and the lots did not extend to the shore of Blue Lake. Harrold retained ownership of the strip of land between the lots and the shore but

1. Because we affirm on this issue, we need not address the Appellants' challenges as to whether the easement was also created by prescription, implication or was a public highway by use. "Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute a basis for reversal even if erroneous." *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 711 (Ind.Ct. App.2007), *trans. denied.*

granted lot owners "an easement or right of way over the property of said grantors between the north line of said lot and the lake shore," as expressed in the deeds conveying the lots. Exhibits 7, E, F, H.

Subsequently, plats of Harrold's Second, Third and Fourth Additions were recorded. Below is the layout of Harrold's First Addition as depicted in the 1922 Plat.

In 1958, the Whitley County Surveyor recorded in "Plat Book E, page 2" a "Plat of Survey" of Harrold's First Addition. The document depicted the land along the lakeshore divided into lots ("lakeside lots"), corresponding to the widths of the lots in the First Addition, as well as a forty-foot wide easement that ran along the shore of Blue Lake between Lots 2 and 27, north of the First Addition lots. Between Lots 8 and 9, there was a "30' Easement" that stretched to the shore. Although delineated, the lakeside lots and forty-foot easement were still owned by the original grantor and his family members, the Harrolds. Below is a reproduction of the 1958 Plat of Survey followed by an enlargement of the land that is subject to this appeal.

In the years following, the Harrolds began conveying the lakeside lots to the corresponding Harrold's First Addition lot owners. These Lakeside Lot Deeds included the following language, or a slight variation thereof:

Subject to the following covenants and agreements:

1. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns agree that they will not erect upon said real estate any structure other than septic tanks, drains or sewers.

2. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns agree that the conveyance of said real estate shall be subject to the right-of-way of the existing road and Easement to the Northern Indiana Public Service Company.

3. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns also agree that the conveyance of said real estate shall be subject to the right of the owners of lots in any of Harrold's Additions to

Blue Lake to cross said real estate on foot to gain access to Blue Lake. Exhibits 9, 13, 21, 23, 27, 29, 32, 35, 43, 49. A majority of the Lakeside Lot Deeds also noted that the conveyance of the deed was "subject to a 40 foot wide public easement for roadway purposes across the North end thereof as shown in survey recorded in Plat Book 'E', page 2, records of Whitley County, Indiana." Exhibits 13, 23, 27, 29, 32, 35, 43, 49.

Currently, the Papes own Lots 7 and 8, the Rennakers own Lots 9 and 10, Ramsey owns Lot 13, and Gleason owns Lot 14 in Harrold's First Addition. All of these lots are lake front properties that include the original lots in addition to the corresponding lakeside lot. It is undisputed among the parties that there is a walking easement along the lots abutting the shoreline of Blue Lake for use by the lot owners in all of the Harrold Additions. However, a dispute arose as to whether the forty-foot easement was a driving easement for the landowners within Harrold's First Addition. The Rennakers, the Papes and Ramsey placed obstacles, including telephone poles, boulders, fence posts, and a movable pier, along the disputed easement area to prevent other lot owners from driving vehicles or lawnmowers along the easement. These actions resulted in heated arguments among the neighboring lot owners.

In 2005, Gleason filed a complaint, naming all of the landowners in Harrold's First Addition as defendants, seeking a declaratory judgment as to the existence of the forty-foot driving easement and an injunction preventing defendants from blocking the path. The majority of the landowners named as defendants either failed to respond to the complaint or otherwise filed motions to be dismissed from the lawsuit, leaving only the Appellants. Based on the Appellants' motion, the trial court viewed the subject property on March 20, 2008, in the presence of counsel for the parties. Subsequently on March 26–27 and April 2–3, 2008, the trial court conducted a bench trial. Largely adopting Gleason's sixty-page proposed findings of fact[2] and conclusions of law, the trial court declared the forty-foot easement, as shown on the 1958 Plat of Survey, was a valid driving easement "by express grant, by prescription, and by implication" and that the easement was also "a public highway as a matter of fact and law." Appellants' Appendix at 79. The trial court also permanently enjoined the defendants from encroaching or impeding access to both the forty and thirty-foot easements. The Appellants sought and obtained a stay of the judgment while the appeal was pending. This appeal ensued.

**Discussion and Decision**

*Standard of Review*

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Therefore, our standard of review is two-tiered: we first determine whether the evidence supports the trial court's findings, and second, we determine whether the findings support the judgment. *Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 996 (Ind.Ct.App.2006). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely upon those findings. *Id.* In determining whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

2. Although labeled "Findings of Fact," the contents were merely the summation of testimony, witness by witness, with a bent favoring the plaintiff's case.

In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* However, while we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We evaluate questions of law, such as interpretation of contractual provisions, *de novo* and owe no deference to a trial court's determination of such questions. *Id.*

■ Both parties acknowledge that the trial court adopted Gleason's Proposed Findings of Facts and Conclusions of Law almost verbatim. While there may be advantages of practicality and efficiency, the wholesale adoption of one party's proposed findings creates "an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court." *Prowell v. State,* 741 N.E.2d 704, 709 (Ind.2001). While such adoption of proposed findings is not prohibited, the trial court is ultimately responsible for the validity of the final order.[3] *See Parks v. Delaware County Dept. of Child Servs.,* 862 N.E.2d 1275, 1278 (Ind.Ct.App.2007).

### I. Existence of Forty–Foot Driving Easement

■ The arguments of the Appellants are scattered across the various theories encompassed within the order.[4] We concentrate our analysis on the decisive question of whether the language in the Lakeside Lot Deeds created the forty-foot driving easement by express reservation. This undertaking requires the interpretation of the deeds containing the easement provision, a pure question of law. *See Drees Co. v. Thompson,* 868 N.E.2d 32, 39 (Ind.Ct.App.2007), *trans. denied.*

> The object of deed interpretation is to identify and implement the intent of the parties to the transaction as expressed in the plain language of the deed. We read the language of real covenants in the ordinary and popular sense, and not in a technical or legal sense. If the terms of the deed are not ambiguous, we apply them according to their clear and ordinary meaning. We presume that the parties intended for every part of a deed to have some meaning, and we favor a construction that reconciles and harmonizes the entire deed.

*Parkison v. McCue,* 831 N.E.2d 118, 128 (Ind.Ct.App.2005) (citations omitted), *trans. denied.* "In construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by the proper construction of the language of the instrument from an examination of all

---

3. There is more than one way to create an easement. However, it is disconcerting that the trial court was willing to adopt the exhaustive version of Gleason's proposed submission that recognized the creation of the forty-foot easement via four separate theories. We acknowledge the enormous challenges placed on trial courts but with that the trial bench must also balance the need for confidence in judgments rendered.

4. Finding 240 of the trial court order reads in pertinent part, "Plaintiff is entitled to judgment in his favor declaring the easement pursuant to the express grant contained in the deeds themselves, as well as the Plats and 1958 Plat of Survey recorded in the Whitley County Recorder's Office. Plaintiff's Ex. 4, p. 9." Appellants' App. at 61. The original 1922 Plat clearly does not depict the now disputed forty-foot easement. Furthermore, there is no language on the 1958 Plat of Survey identifying the purpose for or in whose interest the easement exists. Therefore, the 1958 Plat of Survey cannot in and of itself create the forty-foot easement. *See Zakutansky v. Kanzler,* 634 N.E.2d 75, 81 (Ind.Ct.App.1994)("The grant of express easement must contain all formal requisites of a grant of land.").

of the parts thereof." *Drees Co.,* 868 N.E.2d at 38. Only when the provision is ambiguous may the court consider the situation of the property and the parties, and the surrounding circumstances at the creation of the instrument to determine intent. *Id.* The creation of an easement does not require that particular words are employed. *Larry Mayes Sales, Inc. v. HSI, LLC,* 744 N.E.2d 970, 973 (Ind.Ct. App.2001). Rather, when interpreting language alleged to create an easement through an express grant or reservation, any words that clearly reveal the intention of the parties to create an easement are sufficient. *Id.* As the Rennakers, the Papes and Ramsey were the only Harrold's First Addition lot owners who were represented at trial and are participants on appeal, we need only review the Lakeside Lot Deeds pertaining to their lots.

■ All but one of the relevant Lakeside Lot Deeds contain the provision that the conveyance of the deed was "subject to a 40 foot wide public easement for roadway purposes across the North end thereof as shown in survey recorded in Plat Book 'E', page 2, records of Whitley County, Indiana." Exhibits 23, 27, 35, 19.[5] The Appellants claim that this clause is not sufficient to create an express easement by using the phrase "subject to" based on *Mayer v. BMR Props., LLC,* 830 N.E.2d 971 (Ind.Ct.App.2005). *Mayer* addressed the use of the phrase "subject to" in circumstances involving covenants and restrictions. However, the issue here involves the creation of an easement, an interest in real estate, which is better addressed by *Nelson v. Parker,* 687 N.E.2d 187 (Ind.1997) that concerns the creation by reservation of an interest in real estate: a life estate.

*Nelson* involved a warranty deed including the following language:

> RUSSELL H. NELSON, DURING HIS LIFETIME, AND UPON HIS DEATH, SHALL PASS TO DANIEL NELSON.
> SUBJECT TO: EASEMENTS, LIENS, ENCUMBRANCES, *LIFE ESTATE IN IRENE PARKER, AND RESTRICTIONS OF RECORD.*

*Id.* at 187 (emphasis as in orig.). The issue addressed was whether this language was sufficient to create a life estate in Parker and more specifically whether a grantor could reserve an interest in a stranger or non-party to the contract. *Id.* Our supreme court first expressed its agreement with the lower courts' conclusion that the record indicated a clear intent of the grantor to create a life estate in Irene Parker, who was not involved in the conveyance of the warranty deed. *Id.* at 188. Despite acknowledging that it was arguable whether "subject to" created a reservation, the court held that the inadvertent use of conveyance language or "other clumsy effort to grant an interest in land should not frustrate an otherwise clear intent based on mindless adherence to a formal and outdated rule." *Id.* at 189. Therefore, the court upheld the judgment declaring that the deed reserved a life estate in Parker. *Id.* at 190.

In the same breath questioning the use of "subject to," the *Nelson* court confirmed Indiana's firm foundation in the rule that a grantor's intent should control the effect of a deed rather than the parlance chosen by the drafter. The use of the phrase "subject to" makes the language regarding the easement ambiguous because this phrase would normally indicate words of qualification in reference to something that has already been created rather than words

---

5. The original Lakeside Lot Deed is not included in evidence but subsequent deeds in the chain of title for Lot 7 include similar language.

creating an interest. *See Mayer*, 830 N.E.2d at 981. However, the forty-foot easement had yet to be created as the 1958 Plat of Survey did not indicate who received the interest in the easement nor is there any other evidence of a conveyance of an interest in the depicted easement. Moreover, the language in the Lakeside Lot Deeds is not simply a passing reference to the easement. Rather, it details the dimensions, purpose, and the users of the easement as well as references a recorded document that specifies the exact location of the easement. Therefore, we turn to examine the circumstances surrounding the parties and properties at the time of the creation of the Lakeside Lot Deeds to determine the intent of the grantors.

Prior to conveying the lakeside lots, the Harrolds owned the entire strip of land between Blue Lake and the First Addition lots. In the deeds conveying the lots in Harrold's First Addition, a clause provided that the owner had "an easement or right of way over the property of said grantors between the north line of said lot and the lake shore." Exhibits 7, E, F, H. Furthermore, the deeds for lots in the Second, Third and Fourth Additions, contained the following provision:

> And, the grantors hereby grant to the grantee ... free right and liberty ... on foot, but not with cattle, sheep, pigs, or other animals to pass and repass along,

over and upon real estate owned by said grantors between Frank Harrold's First Addition to Blue Lake and the shore line of Blue Lake, for all purposes connected with the use and enjoyment of the said grantees premises hereinabove described as a single private dwelling house, but not for any other purpose. The grantors also grant unto the grantee ... to walk over the walkways and to drive over the drive-ways in Frank Harrold's First Addition to Blue Lake and Frank Harrold's Second Addition to Blue Lake.

Exhibits 65, 66, 68, 69, 70, 71, 72, 73, 74, and 75. These provisions clearly indicate that the Harrolds wanted to provide the lot owners in any of the additions with access to Blue Lake. Also, the usage of the terms "right of way" [6] and "drive over the drive-ways" implies access by vehicles. As acknowledged by both parties, the 1922 Plat depicts a "30' Drive" between Lots 8 and 9.

In 1958, the Plat of Survey was recorded and depicted the forty-foot easement as well as delineating the lakeside lots. It was signed by the Whitley County Surveyor and contained the description, "PLAT OF SURVEY of lands between Lots 1 to 35 inclusive of Harrolds First Addition and Blue Lake[.]" Appellants' App. at 346. Thus, the purpose of the survey appears to be to divide the shoreline land owned by

---

**6.** According to Black's Law Dictionary, "right-of-way" means:

> 1. A person's legal right, established by usage or by contract, to pass through grounds or property owned by another. Cf. EASEMENT 2. The right to build and operate a railway line or a highway on land belonging to another, or the land so used. 3. The right to take precedence in traffic.

Black's Law Dictionary 1326 (7th ed.2001).

Merriam–Webster online dictionary lists its definition as:

> 1: a legal right of passage over another person's ground 2 a: the area over which a

> right-of-way exists b: the strip of land over which is built a public road c: the land occupied by a railroad especially for its main line d: the land used by a public utility (as for a transmission line) 3 a: a precedence in passing accorded to one vehicle over another by custom, decision, or statute b: the right of traffic to take precedence c: the right to take precedence over others.

Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/right-of-way (last visited August 10, 2009).

the Harrolds into lots that correspond to the original lots of Harrold's First Addition. As noted above, the Plat of Survey does not provide any detail regarding the scope or ownership of the easement. The first mention of the scope and ownership of the easement is in the Lakeside Lot Deeds. These circumstances reasonably lead to the inference that the Harrolds intended to create the forty-foot driving easement for the use of the owners within the Harrold Additions. Thus, the "subject to" clause in the Lakeside Lot Deeds grants and reserves to each and every land owner in the Harrold Additions the right to access Blue Lake by way of the forty-foot easement for "roadway purposes."

Moreover, reading the forty-foot easement provision together with the list of other restrictions in the deeds further supports the conclusion that the term "roadway purposes" contemplates a greater burden on the forty-foot easement than simply foot traffic.

Subject to the following covenants and agreements:

1. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns agree that they will not erect upon said real estate any structure other than septic tanks, drains or sewers.

2. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns agree that the conveyance of said real estate shall be subject to the right-of-way of the existing road and Easement to the Northern Indiana Public Service Company.

3. The Second Parties [Grantees], their heirs, Executors, Administrators and assigns also agree that the conveyance of said real estate shall be subject to the right of the owners of lots in any of Harrold's Additions to Blue Lake to cross said real estate on foot to gain access to Blue Lake.

The third restriction specifically permits foot traffic on any portion of a lakeside lot. With this later reference to the burden of foot traffic on the entire lakeside lot, the absence of any restriction coupled with the use of the term roadway in the language of the forty-foot easement indicates the intention of a type of traffic above and beyond that of pedestrians. Also, "the right-of-way of the existing road" logically refers to the extension of the "30' Drive" between Lots 8 and 9 to the lake in order to provide a complete path from the public road to the forty-foot easement. Furthermore, although there is no evidence as to the location or scope of the NIPSCO easement, it would be difficult to imagine that the utility company would be limited to accessing the properties it serves by foot to repair or construct utility lines.

Finally, the brief of the Appellants is silent as to a valid alternative explanation of the clause or evidence supporting contrary intentions of the Harrolds.[7] Therefore, the "subject to" clauses in the Lakeside Lot Deeds were sufficient to create by reservation and grant the forty-foot easement for the use of residents of the Harrold Additions.[8]

## II. Injunction

 The Appellants also contend that the permanent, mandatory injunction

---

7. Neither of the two witnesses that were parties to two of the relevant Lakeside Lot Deeds provided testimony on the purpose of the "subject to" clause or any information regarding the circumstances of executing the deed.

8. The Appellants note that the "subject to" clause is absent from the Lakeside Lot Deed for Lot 8, now owned by the Papes. Despite this omission, it is clear that it was the intention of the grantors, the Harrolds, to create a forty-foot easement that spanned the entire addition as depicted in the 1958 Plat of Survey. To declare less than the entire depicted

imposed is vague and unnecessarily broad. Gleason fails to address the validity of the breadth of the injunction. "An injunction is an extraordinary remedy that should be granted only with caution." *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 64 (Ind.Ct.App.2005). Injunctions must be narrowly tailored so that the scope is never greater than is reasonably necessary to protect the interests of the aggrieved parties. *Id.*

While not directly relevant to the resolution of the injunction issue, we note that the first covenant and agreement in the Lakeside Lot Deeds is that the lot owner agrees that he/she will not build any structure on the lot other than septic tanks, drains or sewers. As the trial court did not use this language, we look to the order that provides in pertinent part:

> 3. Defendants, and each of them, are hereby permanently enjoined from encroaching upon both the 40' easement and the 30' easement by the placing of trees, flower beds, piers, boats, fences, or any other obstacles which would serve to deny or impede access to the easements by any users thereof.
>
> 4. Defendants, and each of them, shall, within 30 days from the date of this Order, remove any such obstacles from the 40' easement and the 30' easement.

Appellants' App. at 80. The Appellants interpret these provisions as requiring the complete clearing of the easements of any and all obstacles, including trees. We believe this interpretation fails to include the significance of the phrase, "deny or impede access."

The scope of the easements is for roadway purposes, i.e., to permit passage of vehicles.[9] The order mandates the removal of any items that deny or impede (interfere or slow the progress of) access (the ability to enter or pass to and from a place)[10] to the easements. Thus, items to be cleared from the easements only include those that prohibit the reasonable passage of a vehicle along the easements. This would encompass the objects the Appellants admittedly placed to purposely block the previously passable easements. Such items included, but are not necessarily limited to, telephone poles, boulders, fence posts, and movable piers. The order also prohibits the placing of additional objects within the easements that would hamper the passage of a vehicle within the easements. Reading the provisions of the injunction in light of the purpose of the easements and the rights and past actions of the parties, the injunction is not vague or overbroad.

### Conclusion

In sum, the forty-foot easement along the shoreline of Blue Lake was created by express reservation to the lot owners of the Harrold Additions via the Lakeside Lot Deeds. The permanent injunction imposed to protect the lot owners' rights in the easements was not vague or overbroad.

Affirmed.

DARDEN, J., and ROBB, J., concur.

---

easement would defeat the intention of the grantors and the utility of the easement. Furthermore, the Papes also own Lot 7. The Lot 7 deed includes the "subject to" language.

9. The parties agree that the thirty-foot easement between Lots 8 and 9 was originally labeled as a "30' Drive" on the 1922 Plat.

10. Definitions obtained from Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary (last visited August 11, 2009).