**Jeff SAGARIN and Shirley Jablonski,**
**Appellants–Plaintiffs,**

v.

**CITY OF BLOOMINGTON,**
**Appellee–Defendant.**

No. 53A01–0909–CV–454.

Court of Appeals of Indiana.

Aug. 20, 2010.

Rehearing Denied Oct. 26, 2010.

Joby D. Jerrells, Bloomington, IN, Attorney for Appellants.

Marjorie K. Rice, Bloomington, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Plaintiffs Jeff Sagarin and Shirley Jablonski appeal the trial court's order regarding their claims for inverse condemnation and taking without just compensation against Appellee–Defendant the City of Bloomington ("the City"). We affirm in part, reverse in part, and remand.

### Issues

On appeal, the parties raise numerous issues. We consolidate and revise the issues raised by the Appellants to the following:

I. Whether the trial court erred by finding in favor of the City as to Sagarin's claims;

II. Whether the trial court abused its discretion by denying equitable relief; and

III. Whether the trial court erred in denying the award of attorney's fees.

On cross-appeal, the City raises the following issues:

IV. Whether the trial court erred in concluding that the statute of limitations had been tolled by reason of the City's fraudulent concealment; and

V. Whether the trial court erred in concluding that the inverse condemnation claim was not extinguished by the alternative creation of the easement by prescription or common law dedication.

### Facts and Procedural History

In 1969, a more genteel time in Southern Indiana, where the family lawyer was not expected to be on retainer, Shirley and Robert Jablonski purchased a lot on Southdowns Drive, Bloomington, and built a home. The Jablonskis also obtained a variance from the City's sidewalk requirement because the rest of the neighborhood did not have sidewalks. Shirley Jablonski, a widow, still lives in the house.

There were two fatal accidents on a nearby road, High Street, both involving young girls being hit by a car. One occurred in 1964 and the other in 1972. In response to the accidents, the City installed a stop sign at High Street and Southdowns Drive. There was also a campaign by some of the neighborhood property owners to install either sidewalks or a walking path in the neighborhood to provide children walking to the nearby elementary school a safe place to walk. Suzanne Ziemer, a local resident and member of the local PTA, became actively involved in the campaign. Ziemer spoke with both the Jablonskis and their neighbor, Deborah Campbell, about installing a path running along their shared lot line for children to use to walk to and from school.

In 1972, a City employee visited the Jablonskis and Campbell to discuss the installation of a pathway. Neither homeowner signed a document granting the City an easement or providing permission to build the pathway on either property. When Campbell refused to agree to the installation of the pathway, the City employee indicated that her permission was

not necessary because the City had the right to install the path. Similar statements were made to the Jablonskis. In late 1972, the City installed a small asphalt footpath that ran between the Campbell and Jablonski properties and then made a dog-leg to connect to the end of Greenwood Avenue.

In 1993, Sagarin purchased Campbell's former home. When viewing the home before purchasing it, Sagarin noticed the asphalt pathway and his realtor said that the City had an easement for it. When purchasing the home, Sagarin had a title search completed, which noted a utility easement but not one for the pathway.

In 2007, the City Engineer, Justin Wykoff, spoke with Sagarin to inform him that the City was going to widen the pathway to eight feet so that two wheel chairs or two bicycles could pass one another on the pathway. Sagarin went to the county clerk and City Hall to obtain copies of his deed and any easements related to his or Jablonski's property. There was no documentation as to the existence of an easement held by the City on the properties. On July 6, 2007, Sagarin and Jablonski filed a complaint against the City for claims of Ejectment and Quiet Title, Inverse Condemnation, and Taking Without Just Compensation. After unsuccessful attempts at mediation and summary judgment motions, a bench trial was held. On August 24, 2009, the trial court issued its order, entering judgment in favor of Jablonski on her inverse condemnation and taking without compensation claims but in favor of the City with regards to Sagarin's claims. Without mentioning attorney's fees, the court ordered appraisers to be appointed to value the easement and to assess damages. Additional facts will be provided as necessary. This appeal ensued.

## Discussion and Decision

Pursuant to Indiana Trial Rule 52(A), the trial court entered findings of facts and conclusions of law at the conclusion of the bench trial. We review such findings and conclusions with a two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *City of South Bend v. Dollahan*, 918 N.E.2d 343, 349 (Ind.Ct.App. 2009), *trans. denied*. Findings will only be set aside if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them. *Id.* A trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely upon the findings. *Rennaker v. Gleason*, 913 N.E.2d 723, 728 (Ind.Ct.App.2009).

In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* at 729. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We evaluate questions of law, such as interpretation of contractual provisions, *de novo* and owe no deference to a trial court's determination of such questions. *Id.*

### I. Sagarin's Inverse Condemnation Claim

■ First, Sagarin appeals the trial court's judgment in favor of the City as to his inverse condemnation claim. There is simply no claim of inverse condemnation for Sagarin.[1] The City took the easement by inverse condemnation when Campbell

1. An action for inverse condemnation requires: "(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings." 29A C.J.S. *Eminent Domain* § 560 (2007).

owned the property. When Sagarin bought the property, he was informed by his real estate agent that there was a public easement on the lot. A main consideration to determine whether a taking has occurred is whether the impact of government action "has interfered with distinct investment-backed expectations." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 582 (Ind.2007) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). As noted by the trial court, Sagarin's purchase of the property with the knowledge of the easement defeats any possible economic injury because that circumstance was an implicit consideration in the price negotiation of the home. Therefore, he has no basis for an inverse condemnation claim.

## II. Manner of Relief

■ Next, Jablonski contends that she is entitled to the equitable relief of ejecting the City from the contested easement because the Indiana Constitution does not permit a governmental entity to take property by fraudulent means. However, the Indiana Supreme Court recently held that inverse condemnation is the sole remedy for a landowner when a governmental entity exercises complete dominance and purported ownership of a piece of land without utilizing the proper takings procedure. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 733 (Ind.2010). The Court explained that the approach mirrors the bases of eminent domain proceeding provisions "designed to compensate the landowner but also to permit the public need to be satisfied relatively quickly and at no more than a fair price." *Id.* at 732. "To allow alternative remedies would circumvent these provisions." *Id.*

■ Jablonski's argument presupposes that the easement was taken by fraud as opposed to inverse condemnation. However, the City employee's subjective motive in making statements is not relevant; a determination of fraud is superfluous. Whether an action was initiated thirty-five years earlier or more recently, the recovery is the same. Where there is a public necessity for an easement, there is no equitable right to prevent a public entity from a taking. The most or least that Jablonski could expect is the same: value of the taken land, interest, and attorney's fees. Ind.Code § 32–24–1–14 and –16.

■ Consistent therewith, there is no distinction made by the Indiana Supreme Court in *Murray* that a taking by fraud would give rise to an alternative remedy. Furthermore, if ejectment was a possible remedy, its relief would be short-lived in these circumstances. The state has inherent authority to take private property for public use. *Murray*, 925 N.E.2d at 731.

■ While not unlimited, eminent domain proceedings are powerful instruments of government. *Derloshon v. City of Fort Wayne on Behalf of Dep't of Redev.*, 250 Ind. 163, 166, 234 N.E.2d 269, 271 (1968). As long as the governmental entity intends to use the land for a public purpose that is constitutional, there are few defenses to prevent a taking. *See id.* Whereas the purpose of the easement here has a public purpose and no constitutional challenges as to the path's use have been raised, the City could respond to an order of ejectment by simply implementing eminent domain proceedings. "[I]njunctive relief is not available to prevent a taking for a public purpose." *Murray*, 925 N.E.2d at 732. The end result would be the same: monetary damages. Therefore, the trial court did not err in awarding damages as opposed to the equitable relief of ejectment.[2]

## III. Attorney's Fees

■ Jablonski also contends that the trial court erred in failing to award attorney's fees. We agree.

Indiana Code Article 24, "Eminent Domain," includes the following statute:

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.

Ind.Code § 32–24–1–16; *Murray*, 925 N.E.2d at 731. Here, the City exercised its inherent authority to take private property for a public use but did not comply with constitutional or statutory requirements. Jablonski is entitled to have damages assessed under Article 24.

Chapter 2 of Article 24 concerns "Procedures for Cities and Towns." Section 32–24–2–17 provides: "If applicable, a landowner who incurs attorney's fees through the exercise of eminent domain under this chapter is entitled to reasonable attorney's fees in accordance with IC 32–24–1–14." Pursuant to Indiana Code Section 32–24–1–14:

> (a) Except as provided in subsection (b), the plaintiff shall pay the costs of the proceedings.
>
> (b) If there is a trial, the additional costs caused by the trial shall be paid as ordered by the court. However, if there is a trial and the amount of damages awarded to the defendant by the judgment, exclusive of interest and costs, is greater than the amount specified in the last offer of settlement made by the plaintiff under section 12 of this chapter, the court shall allow the defendant the defendant's litigation expenses, including reasonable attorney's fees, in an amount not to exceed the lesser of:
>
> (1) twenty-five thousand dollars ($25,-000); or
>
> (2) the fair market value of the defendant's property or easement as determined under this chapter.

We hold that Jablonski is entitled to recover reasonable attorney's fees.[3]

## IV. Fraudulent Concealment Tolling Statute of Limitations

■ On cross-appeal, the City contends that the trial court erred in finding it had committed fraud. However, we need not address the fraud allegation because injunctive relief was not awarded and fraud is not a prerequisite for the recovery of money damages.

■ As previously stated, although we defer to findings of fact, we do not do so to conclusions of law, but evaluate questions of law *de novo*. *Rennaker*, 913 N.E.2d at 729. "The state has inherent authority to take private property for public use." *Murray*, 925 N.E.2d at 731. However, "[t]he Indiana Constitution and the Fifth Amendment require just compensation if this authority is exercised." *Id.* Our Indiana Legislature has provided a process for taking and for compensation, while at the same time providing a statute of limi-

---

**2.** Sagarin and Jablonski submitted Notice of Additional Authority, citing *Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, —— U.S. ——, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010) to support the idea that monetary compensation is not the sole remedy for inverse condemnation. However, the citations refer only to the plurality portions of the opinion. Therefore, those sections are without precedential authority.

**3.** Sagarin has no basis for an inverse condemnation claim; he likewise has no claim for damages, including attorney's fees.

tations. The City acknowledges that the government must compensate landowners for a taking, but asserts that this principle is applicable only if the statute of limitations "has not yet run." Appellee's Brief at 6.

The trial court's findings included the following: "Due to the actions of the City officials, the landowners were misled into believing that the City had an easement for their properties. Given the circumstances, the Jablonskis and Campbell acted reasonably[.]" (App.18) In essence, the trial court found that, based upon the City's representations, the equities were with the landowners and against the City and therefore the City could not prevail upon the affirmative defenses of statute of limitations and laches. That said, the dispositive inquiry for our purposes is whether the trial court clearly erred by concluding that the statute of limitations was tolled due to the City's actions.

■■■■ The six year limitation for trespass applies to inverse condemnation actions. *Murray*, 925 N.E.2d at 733 (citing Ind.Code § 34–11–2–7(3)). The basis for potentially tolling the statute of limitations in these circumstances is appropriately termed fraudulent concealment. The homeowners were aware that the City was installing the path and were aware of the underlying reasons. Despite the fact that the homeowners did not sign any documents gratuitously granting the City an easement, they made no claim for compensation because they had been informed that the City was acting within its existing rights. Essentially what is alleged is that the City concealed from the homeowners the fact they were entitled to compensation from the City for the easement at issue.

Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay. The fraudulent concealment exception does not establish a new date for the commencement of the statute of limitations, but instead creates an equitable exception. Under this equitable exception, instead of a full statutory limitations period within which to act, a plaintiff must exercise due diligence in commencing his action after the equitable grounds cease to operate as a valid basis for causing delay. Therefore, a plaintiff must institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action.

*Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 931 (Ind.Ct.App.2003). This equitable doctrine is now codified as Indiana Code Section 34–11–5–1.[4] To claim the benefit of this statute, the wrongdoer must have actively concealed the cause of action, and the plaintiff is charged with the responsibility of exercising due diligence to discover the claims. *Malachowski v. Bank One*, 590 N.E.2d 559, 563 (Ind.1992).

Rasoul Istrabadi, the City Engineer in 1972, told the Jablonskis that the City had an easement to build the path, it was a "done deal" and the Jablonskis could not prevent the installation of the path. *See* tr. at 90. The Jablonskis were not shown

---

4. "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitations after the discovery of the cause of action." Ind.Code § 34–11–5–1.

any documents or asked to sign any documents relating to the easement or the installation of the pathway. Istrabadi made similar statements to Campbell. At a Board of Public Works meeting on September 5, 1972, Istrabadi reported that "a lady gave the City an easement for the pathway." Plaintiff's Exhibit 9.

The statements prevented the homeowners from "obtaining the knowledge necessary to pursue a claim." *Meisenhelder*, 788 N.E.2d at 931. There is sufficient evidence of record to support the trial court's conclusions that actions of the City prevented the homeowners from diligent inquiry and that the lawsuit was brought within a reasonable time after the discovery of information leading to the discovery of the cause of action. We find no clear error in the trial court's determination that Jablonski's inverse condemnation claim was not barred by the statute of limitations.[5]

### V. Prescriptive Easement and Common Law Dedication

▮▮▮▮ Finally, the City contends that the easement was established by prescription or common law dedication. We disagree. The four elements required to establish a prescriptive easement are control, intent, notice and duration. *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind. 2005). For the element of intent to be satisfied, the party claiming a prescriptive easement must demonstrate intent to claim the right to use the portion of land for a specific purpose. *Whitman v. Denzik*, 882 N.E.2d 260, 265 (Ind.Ct.App.2008). In other words, the party must have used the land in an adverse manner to the rightful owner who had knowledge of the use and was acquiescent. *Id.*; *Capps v. Abbott*, 897 N.E.2d 984, 988 (Ind.Ct.App.

2008). Here there was no acquiescence by the Jablonskis due to the statements made by Istrabadi. Had the Jablonskis known that they had the right to terminate the public's use of the pathway, they would have done so. *See* tr. at 100 (Jablonski: "And I'm annoyed that I was, that we, I was lied to and all these years I've put up with a bunch of nonsense because of a lie."). Based on these circumstances, the City has not established a prescriptive easement based on the public's use of the pathway due to the statements made to the Jablonskis.

▮▮▮▮ The City also contends that the easement was created by common law dedication. Two elements are required for a common law dedication: (1) the intent of the owner to dedicate and (2) the acceptance of the public of the dedication. *Jackson v. Bd. of Comm'rs of County of Monroe*, 916 N.E.2d 696, 704 (Ind.Ct.App. 2009), *reh'g denied, trans. denied.* Dedication may be express or implied, which arises by the acts of the owner. *Id.* "The intention must clearly appear, and the acts and declarations of the owner relied on to establish it must be clear, convincing, and unequivocal." *Id.* (quoting *Town of Poseyville v. Gatewood*, 65 Ind.App. 50, 52, 114 N.E. 483, 484 (1916)). Clearly Jablonski did not intend to dedicate the pathway to the public. The formation of intent by Jablonski was obviated by the statements made by the City. Jablonski was told by the City that it was going to put in a pathway and she had no choice but to watch it happen. Therefore, the trial court properly concluded that the easement was not established through common law dedication or prescription.

---

5. The City also alleged that laches bars the claim. However, it does not raise that issue on appeal.

Based on the analysis above, we affirm the trial court's order but reverse the trial court's failure to award attorney's fees.[6]

Affirmed in part, reversed in part, and remanded.

MAY, J., concurs.

BARNES, J., concurs in result in part and dissents in part with opinion.

BARNES, Judge, concurring in result in part and dissenting in part.

Although I agree with the majority that Sagarin does not have a viable inverse condemnation claim, I do not agree with the majority's conclusion that the City prevented the Jablonskis from diligent inquiry so as to toll the statute of limitations regarding their claim. On that issue, I respectfully dissent.

First, I am not entirely convinced that the City acted with mal intent. As the trial court found, the path was constructed on a utility easement that ran the length of the property line between Campbell's and the Jablonski's property. App. pp. 11, 13, 16. The trial court also found that Campbell initially agreed to allow the City to construct the path and, only later, refused to grant the City an easement. *Id.* at 12–13. At one point, the late Mr. Jablonski even walked the route of the intended path with the City Engineer and voiced no objection to the installation of the path. *Id.* at 13.

Even if I assume that the City did, in fact, make false and misleading statements in 1972 when contact was made with Campbell and the Jablonskis, I do not believe that a fraudulent concealment claim is sustainable. "Usually, to invoke the protection provided by this statute, the wrongdoer must have actively concealed the cause of action and the plaintiff is charged with the responsibility of exercising due diligence to discover the claims." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind.Ct.App. 2010).

The majority acknowledges that the Jablonskis were aware of what was occurring. The City was installing a path and the Jablonskis signed no documents authorizing the City to proceed. The blunt fact is that at no time and under no circumstances was a formal easement granted or recorded. I understand the majority's position that the City should not profit by its deception. Nevertheless, nothing in the record suggests that the City hid or otherwise prevented the Jablonskis from getting the same information that Sagarin discovered in 2007. For this reason, I cannot agree with the majority that the City fraudulently concealed the Jablonskis' inverse condemnation claim.

No one wants to encourage double-dealing and deception but, in my opinion, this is the very type of circumstance the statute of limitations was intended to guard against. *See McCarty v. Hospital Corp. of America*, 580 N.E.2d 228, 231 (Ind.1991) (observing the policy behind statutes of limitations is to guard against stale claims, lost evidence, and faulty memories of witnesses). At the hearing, neither Campbell nor Mrs. Jablonski could identify by name the person from the City with whom they spoke, and Robert Jablonski did not testify because he was deceased. It is not surprising that the City cannot bring to court its representative from thirty-eight years ago. Under these facts, I would conclude

---

6. We also note that the scope of the easement in question is defined as of the date Jablonski and Sagarin filed their claims in 2007. Expansion of the easement beyond this 2007 definition would require additional action on the part of the City.

that the statute of limitations bars the plaintiffs' claims against the City.