# FOR PUBLICATION



FILED
Feb 13 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EARL R.C. SINGLETON**
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**PAUL J. WATTS**
Watts Law Office, P.C.
Spencer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LARRY EDWARD FLICK,      )
                         )
    Appellant/Plaintiff,      )
                         )
      vs.               )      No. 47A01-1303-PL-135
                         )
JEWELL REUTER,           )
                         )
    Appellee/Defendant.       )

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea K. McCord, Judge
Cause No. 47C01-1107-PL-798

**February 13, 2014**

**OPINION- FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Jewell Reuter lived in a mobile home on a small portion of her family's land for more than twenty years. For simplicity, we refer to that small portion of land as Reuter's land. Reuter made a home for herself; she tended the land, gardened, and installed a septic system and water lines to access a nearby well. Unbeknownst to Reuter, her land was never deeded to her. In 2010, Larry Flick, a non-relative, purchased 2.28 acres of the family land in a foreclosure sale. When the parties learned that Flick's 2.28 acres included nearly all of Reuter's land, part of her septic system, and the well she used, a bitter quarrel over ownership of the land ensued.

While the parties were litigating the issue of ownership, Flick tried to drive Reuter from her home. He removed the underpinning of her mobile home and severed the water lines accessing the well. A short time later, he entered Reuter's land with a large rotary mower, destroyed her plants, and erected an electric fence around her home.

Although we ultimately conclude that Reuter's adverse-possession and prescriptive-easement claims fail, we affirm the trial court's $29,487.70 judgment against Flick for damages he caused by attempting to eject Reuter without court authorization. Indiana Code section 32-30-2-1 provides that a person having a valid interest in real property and a right to the possession of that property may recover it and take possession by bringing an action against a person claiming the title or interest in the real property. Flick disregarded the statute and engaged in unconscionable self-help; he must pay for the damage he caused by taking the law into his own hands. We reverse in part, affirm in part, and remand.

## Facts and Procedural History

In 1982, Thomas and Margaret Hess purchased 11.47 acres of land in Lawrence County. Five years later, in 1987, the Hesses allowed their aunt, Reuter, to live in a mobile home on a small portion—0.8 of an acre—of their land. Reuter made a home for herself; she tended the land, gardened, and installed a septic system and water lines to access a nearby well. After moving onto the land, Reuter began receiving tax statements, which she paid.[1] Reuter believed she was paying taxes for her mobile home and her land. *See* Appellant's App. p. 117-18.

In 1988, Thomas and Margaret carved out 2.28 acres of their land and deeded it to their son. Reuter's mobile home lies partially on the east end of those 2.28 acres. For some unknown and unfortunate reason, Reuter's land was never deeded to her. But over the next two decades, she maintained her land and mobile home. And the Hesses and their extended family members, including Eleathia and Gerald Parsley, who later purchased Thomas and Margaret's remaining 9.12 acres, recognized Reuter's ownership.

In 2010, Flick purchased the 2.28 acres Thomas and Margaret had deeded to their son. A survey taken shortly after Flick's purchase revealed that Reuter's mobile home (labeled "Trailer House"), as well as her front yard, sat almost entirely on Flick's property:

---

[1] In an affidavit accompanying her motion for summary judgment, Reuter stated that she paid taxes from 1988 to 2010. *See* Appellant's App. p. 117-18.



*See id.* at 78 (Pl.'s Ex. A). The well Reuter used was on Flick's property, and part of her septic system extended onto his property, too.

Flick and Reuter were friendly at first, but things quickly soured. Flick offered to buy Reuter's mobile home, but Reuter rejected his offer. Flick then cut off Reuter's water supply by removing the underpinning of her mobile home and severing the lines that accessed his well. He also filed a complaint in Lawrence Circuit Court alleging that Reuter had committed trespass. *See id.* at 15-16. Reuter filed an answer claiming ownership of her land and counterclaimed that Flick had committed trespass. *Id.* at 21.

When Flick did not timely respond, Reuter obtained a default judgment against him. But Flick later moved to set aside the default judgment because counsel had "inadvertently missed [Reuter's] response and neglected to prepare an answer in a timely

4

manner." *Id.* at 34. At a hearing on the motion, counsel explained that Flick had a meritorious defense:

> We received, my client received title to this property . . . through a foreclosure sale and attempted to negotiate with [Reuter] and those negotiations came to naught . . . . [W]e believe that if there's a hearing the evidence will suggest that it's virtually impossible on the merits for [Reuter] to prevail because adverse possession in common law has a number of elements . . . but there is one element that they cannot meet and I think we can present evidence to that effect and I would refer the Court to the ruling in *Fraley v. Minger*,[829 N.E.2d 476, 486 (Ind. 2005)]. Under no circumstances [and] at no time has [Reuter] ever paid any taxes on this property she is claiming is hers. So, and I think that serves as the basis, one of the bases for my claim that there's a meritorious defense.

Tr. p. 4-5. The trial court granted Flick's motion to set aside the default judgment. *See* Appellant's App. p. 39 ("[Flick's] request for a finding of excusable neglect is buttressed by his claim that he has a meritorious defense . . . as stated at the hearing of this motion."). Reuter's request to certify the court's order for interlocutory appeal was denied. *See id.* at 4 (CSS entry).

Meanwhile, the relationship between Flick and Reuter continued to deteriorate. In September 2012, Flick entered Reuter's land again, this time with a large rotary mower. He destroyed her plants and installed an electric fence around Reuter's mobile home, temporarily preventing her from entering it.[2] As a result, Reuter filed a motion to amend her counterclaim, seeking attorney's fees and damages. She also sought summary judgment on her amended claims. Flick, too, filed a summary-judgment motion.

In December 2012, the court granted summary judgment for Reuter. The court concluded that Reuter had acquired title to her land by adversely possessing it and

---

[2] Flick later removed the electric fence according to a trial-court order.

establishing a prescriptive easement. The court also concluded that Reuter had not committed trespass.

The court first set forth the elements of adverse possession—control, intent, notice, and duration—and found that Reuter satisfied all four:

> From 1987 until this lawsuit was filed there was no dispute about who owned the .8 acre tract on which [] Reuter's home is located. [The Hesses] gave it to her in 1987 and all family members who resided on the original 11.47-acre tract were aware of her ownership and respected it. Likewise, there is no dispute that [] Reuter claimed the area on which her home is located and from the home to the center of the ditch, installed a bridge, furniture, and placed flower beds, trees, and other improvements to the property and used it as her front yard. The 10-year duration required for adverse possession has been met.

*Id.* at 12-13 (citations omitted). In determining that Reuter had satisfied the elements of adverse possession, the trial court noted that she had complied with Indiana Code section 32-21-7-1, which requires an adverse possessor to pay all required land or real-estate taxes. The court concluded that Reuter "did exactly that. More importantly, that requirement is inapplicable where, as here, the land involved is a boundary-line dispute between contiguous properties." *Id.* at 13 (citations omitted).

The trial court then set forth the elements needed to establish a prescriptive easement, noting that the only differences between the elements for a prescriptive easement and adverse possession were duration, "which is [twenty] years for an easement, the payment of taxes which is not required [for an easement], and that the elements [for an easement] may be established by a long-term acquiescence." *Id.* The court found that Reuter had satisfied the elements for a prescriptive easement as well:

> As previously discussed, [] Reuter claimed ownership of the .8-acre tract on which her home is located in 1987 and has used the area from her home to

6

the center of the ditch as her front yard ever since. Part of her finger system for the septic [system] and her use of the well, both of which are admittedly on [] Flick's property, began in 1987 and continued without interruption until [] Flick cut the water line in 2011. Accordingly, the requirements for a prescriptive easement have been met and [] Reuter is entitled to continue her uses without interruption.

*Id.*

Because the court concluded that Reuter owned the property, it rejected Flick's claim that Reuter had committed trespass. In addition to granting Reuter's summary-judgment motion, the court granted her motion to quiet title on the property and ordered Flick to pay Reuter $29,487.70 in damages. *Id.* at 8-9. Flick filed a motion to correct error, which was denied.

Flick now appeals.[3]

## Discussion and Decision

On appeal, Flick argues that the trial court erred in granting summary judgment for Reuter on her adverse-possession and prescriptive-easement claims. For her part, Reuter challenges the trial court's decision to set aside the default judgment in her favor. She also requests appellate attorney's fees.

## I. Default Judgment

---

[3] Reuter argues that this appeal should not have proceeded; she contends that our motions panel erred when it denied her motion to dismiss. Her motion to dismiss alleged that Flick had failed to timely seek an order compelling the trial-court clerk to complete the clerk's record. Indiana Appellate Rule 10(C) provides that "failure of the appellant to seek such an order not later than fifteen (15) days after the notice of completion of clerk's record was due to have been issued, filed, and served will subject the appeal to dismissal."

We may reconsider a ruling by our motions panel. *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1141 (Ind. Ct. App. 2003). However, "we decline to do so in the absence of clear authority establishing that it erred as a matter of law." *Id.* Here, Reuter does not argue that the motions panel erred as a matter of law; she simply argues that they could have reached a different conclusion. We find no reason to revisit our motions panel's decision.

7

We first address Reuter's claim that the trial court erred when it set aside the default judgment—on her adverse-possession, prescriptive-easement, and trespass claims—in her favor.

"Trial Rule 60(B) motions address only the procedural, equitable grounds justifying relief from the legal finality of a final judgment, not the legal merits of the judgment." *Deutsche Bank Nat'l Trust Co. v. Harris*, 985 N.E.2d 804, 813 (Ind. Ct. App. 2013) (citation omitted). A party filing a Rule 60(B) motion for reasons (1), (2), (3), or (4) must allege a meritorious claim or defense. Ind. Trial Rule 60(B); *Ferguson v. Stevens*, 851 N.E.2d 1028, 1031 (Ind. Ct. App. 2006). The decision of whether to grant or deny a motion for relief from judgment is generally left to the sound, equitable discretion of the trial court. *Wolvos v. Meyer*, 668 N.E.2d 671 (Ind. 1996).

Flick sought relief from judgment under Trial Rule 60(B)(1). In order to obtain relief under Rule 60(B)(1), a party must show "mistake, surprise, or excusable neglect" and a meritorious defense to the judgment. Ind. Trial Rule 60(B). Reuter argues that Flick did not allege a meritorious defense. *See* Appellee's Br. p. 14.

Flick moved to set aside the default judgment because counsel had "inadvertently missed [Reuter's] response and neglected to prepare an answer in a timely manner." Appellant's App. p. 34. At a hearing on the motion, counsel explained that Flick indeed had a meritorious defense:

> We received, my client received title to this property . . . through a foreclosure sale and attempted to negotiate with [Reuter] and those negotiations came to naught . . . . We believe that if there's a hearing the evidence will suggest that it's virtually impossible on the merits for [Reuter] to prevail because adverse possession in common law has a number of elements . . . but there is one element that they cannot meet and I

8

think we can present evidence to that effect and I would refer the Court to the ruling in *Fraley v. Minger*,[829 N.E.2d 476, 486 (Ind. 2005)]. Under no circumstances [and] at no time has [Reuter] ever paid any taxes on this property she is claiming is hers. So, and I think that serves as the basis, one of the bases for my claim that there's a meritorious defense.

Tr. p. 4-5.

Thus, the record shows that Flick asserted a meritorious defense to Reuter's claim that she owned the land. The trial court was within its discretion in accepting that explanation. We cannot say that the trial court abused its discretion in setting aside the default judgment.[4]

## II. Self Help

While the parties were litigating the adverse-possession, constructive-easement, and trespass issues, Flick engaged in conduct designed to drive Reuter from her home. In doing so, he ignored the remedies offered to him by law. Specifically, Indiana Code section 32-30-2-1 provides that:

> A person having a valid subsisting interest in real property and a right to the possession of the real property may recover the real property and take possession by an action brought against the tenant in possession or, if there is not a tenant, against the person claiming the title or interest in the real property.

There are two remedies for gaining possession of real estate wrongfully withheld: an action for ejectment and a writ of assistance. *State Dep't of Natural Res. v. Winfrey*, 419 N.E.2d 1319, 1320-21 (Ind. Ct. App. 1981). Ejectment is a possessory action, and the subject of controversy is not the ultimate title to the land itself but the legal right of

---

[4] Reuter also argues that that the trial court relied on improper considerations in granting Flick's motion to set aside the default judgment. She states that "her own compliance with the trial rules regarding extensions of time appears to have been considered to her detriment." Appellee's Br. p. 15. But such considerations notwithstanding, the record shows that Flick asserted a meritorious defense; thus, we find no error here.

possession.  *Adams v. Holcomb*, 226 Ind. 67, 77 N.E.2d 891 (1948).  Thus, while ownership of Reuter's land had not yet been determined—the parties were awaiting an expedited ruling on that issue—Flick could have pursued possession of the land through the court system.   He chose self-help instead.

In early 2011, Flick entered Reuter's land, removed the underpinning of Reuter's mobile home to gain access to her water lines, and severed them.  This forced Reuter to install a small holding tank and have water delivered to her home at her own expense. Three months later, Flick entered Reuter's land with a large rotary mower, destroyed her plants, and installed an electric fence around her home, interfering with her ability to enter and exit it for up to a week.  Not only did Flick engage in self-help rather than utilize the court system; he committed trespass to chattel.  *See Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind. Ct. App. 2005) (Trespass to chattel occurs where (1) defendant dispossesses plaintiff of plaintiff's chattel; (2) defendant impairs the chattel's condition, quality or value; (3) defendant deprives plaintiff of the use of the chattel for a substantial time; or (4) defendant harms some other thing in which plaintiff has a legally protected interest).  Reuter's ownership of her mobile home is undisputed.

In light of Flick's failure to abide by proper ejectment procedure and his egregious conduct toward Reuter, we conclude that the trial court's $29,487.70 damage award is appropriate.

### III. Adverse Possession

We now address Flick's claim that the trial court erred when it granted summary judgment for Reuter on the theory of adverse possession.

Summary judgment is only appropriate when the moving party affirmatively shows that there are no genuine issues of material fact with regard to a particular issue or claim. *See* Ind. Trial Rule 56(C); *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013) (citing *Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 602 (Ind. 2011)). The non-moving party then bears the burden of producing designated evidence showing the existence of a genuine issue of material fact. *Holiday*, 983 N.E.2d at 577.

"An appellate court reviews these cases through the same lens, and we view all designated evidence and reasonable inferences in a light most favorable to the non-moving party; any doubts are resolved against the moving party." *Id.* We will affirm a trial court's grant of summary judgment on any theory supported by the record. *Id.* (citing *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012)). When the facts are not disputed, reversal is only appropriate if the trial court incorrectly applied the law to those facts. *Id.*

Adverse possession requires clear and convincing proof of control, intent, notice, and duration. *Fraley*, 829 N.E.2d at 486. Specifically:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the

11

claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* These elements must be satisfied for the statutory period of ten years. Ind. Code § 34-11-2-11; *see also Altevogt v. Brand*, 963 N.E.2d 1146, 1152 (Ind. Ct. App. 2012) (citing *Hoose v. Doody*, 886 N.E.2d 83, 92 (Ind. Ct. App. 2008), *trans. denied*). An adverse-possession claim will fail if any of the required elements are not proven. *Altevogt*, N.E.2d at 1152 (citation omitted).

Indiana Code section 32-21-7-1 imposes an additional requirement for adverse possession. To acquire title, Section 32-21-7-1 requires the adverse possessor to pay and discharge:

all taxes and special assessments that the adverse possessor or claimant reasonably believes in good faith to be due on the land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely. However, this section does not relieve any adverse possessor or claimant from proving all the elements of title by adverse possession required by law.

Thus, Reuter was not entitled to summary judgment on her adverse-possession claim unless she showed that there were no genuine issues of material fact regarding the elements of control, intent, notice, and payment of taxes for the required ten-year period.

The parties' appellate arguments on this issue are devoted solely to Reuter's payment of taxes.[5] Flick contends that Reuter did not prove her payment of required taxes, *see* Appellant's Br. p. 6, and we agree.

Reuter designated four pieces of evidence relevant to her payment of taxes: three valuation records and one supplemental affidavit. The first valuation record is for the Parsleys' (previously Thomas and Margaret's) 9.12 acres. The record shows appraisal values from 2002-2010. Appellant's App. p. 104. The second valuation record is assigned to Reuter and provides appraisal values for her mobile home from 2006-2010. *Id.* at 105. The third valuation record is for Flick's 2.28 acres and notes appraisal values from 2007-2010. *Id.* at 106. This evidence is inadequate for three reasons. First, only one of the valuation records is assigned to Reuter. Second, the valuation records do not show that any payments were actually made. Third, even if we assumed that Reuter's valuation record established payment, the record shows that Reuter paid taxes on her mobile home only—not the land—from 2006 to 2010. This is insufficient to show her compliance with Section 32-21-7-1.

The fourth piece of evidence designated by Reuter, her supplemental affidavit, does not save her adverse-possession claim. Reuter suggests that "her sworn statement that she paid all taxes since 1988 believing they included both the land and her home," constitutes prima-facie evidence of her compliance with the tax statute. Appellant's Br. p. 10. But when considering that evidence in conjunction with the documents described

---

[5] The parties do not debate the nature of Reuter's land use in the context of adverse possession—they only discuss tax payment. But the evidence shows that Reuter's land use was permissive, and so she cannot succeed on her adverse-possession claim. Her prescriptive-easement claim also fails for this reason.

above, we conclude that Reuter failed to prove that she paid taxes as required by Section 32-21-7-1.

Anticipating our conclusion, Reuter makes a number of arguments excusing her compliance with Section 32-21-7-1. First, she contends that compliance with the Section is unnecessary because this is a boundary-line dispute. *See* Appellee's Br. p. 10. We disagree. While Reuter's mobile home does straddle a boundary line—shown on page four of this opinion—the boundary between Flick's property and the Parsleys' property is not disputed. The issue is whether Reuter may claim ownership of a portion of land Flick purchased in 2010. However, even if we treated this as a boundary-line dispute, Reuter's argument would fail.

Reuter cites *Ford v. Eckert*, 506 N.E.2d 1209 (Ind. Ct. App. 1980), to excuse her payment of taxes. While *Ford* and other cases provided a tax-payment exception for boundary-line disputes, that exception no longer exists: our Supreme Court's 2005 opinion in *Fraley* held that *Ford* is no longer good law.[6] In *Fraley*, the Court stated that it would not permit "total disregard of the statutory tax payment requirement merely on grounds that the legal title holder has other clear notice of adverse possession." 829 N.E.2d at 493. Thus, to the extent Reuter argues that the tax-payment requirement is totally inapplicable simply because this is a boundary-line dispute, we disagree.[7]

---

[6] Specifically, the Court stated that "disregard of clear statutory language [] should be avoided, and we disapprove of *Kline* [*v. Kramer*, 179 Ind. App. 592, 597, 386 N.E.2d 982, 987 (Ind. Ct. App. 1979)] and its progeny as to their understanding and application of the adverse possession tax statute." *Fraley*, 829 N.E.2d at 492. The Court mentioned *Ford* by name when listing *Kline's* progeny.

[7] This Court has previously acknowledged that a total exception no longer exists. *See State v. Serowiecki*, 892 N.E.2d 194, 202 (Ind. Ct. App 2008) ("Our Supreme Court made clear in *Fraley v. Minger* that the adverse possession tax statute may not be totally disregarded."); *Dewart v. Haab*, 849 N.E.2d 693, 696 (Ind. Ct. App. 2006); *Piles v. Gosman*, 851 N.E.2d 1009, 1014-15 (Ind. Ct. App. 2006).

But *Fraley* did leave the door open for substantial-compliance claims, and Reuter argues that she substantially complied with the tax statute. The *Fraley* Court held that substantial compliance may satisfy the requirement of tax payment "in boundary disputes where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession." *Id.* at 493. Reuter contends that "since 1988 she has paid all taxes that were billed to her believing she was paying for both her [land] and her [mobile] home." Appellee's Br. p. 10. In essence, Reuter argues that it was reasonable for her to believe she was not required to pay taxes on her land. We do not think that is a reasonable belief, but even so, Reuter has not shown that she substantially complied with the statute. The documentary evidence in this case showed, at best, that Reuter paid taxes on her mobile home from 2006-2010, which is less than half of the statutory period. And even if we accepted as true Reuter's sworn statement that she paid taxes on her mobile home from 1988 to 2010, there is still no evidence that she paid taxes on the land itself. We therefore conclude that Flick, not Reuter, was entitled to summary judgment on this issue.

The trial court erred in granting summary judgment for Reuter on her adverse-possession claim.

### IV. Prescriptive Easement

We next consider Flick's contention that the trial court erred in granting summary judgment for Reuter on her prescriptive-easement claim. Flick argues that Reuter is not entitled to use his land; particularly the well on his property.

15

The law disfavors prescriptive easements. *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind. 2005) (citing *Carnahan v. Moriah Prop. Owners Ass'n., Inc.*, 716 N.E.2d 437, 441 (Ind. 1999)). For this reason, the party claiming a prescriptive easement must meet stringent requirements. *Id.* (citation omitted). Like with adverse possession, a party claiming the existence of a prescriptive easement "must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration." *Whitman v. Denzik*, 882 N.E.2d 260, 264-65 (Ind. Ct. App. 2008). In other words, *Fraley*'s adverse-possession reformulation applies to prescriptive easements. *Wilfong*, 838 N.E.2d at 406. There must be evidence of "an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right." *Whitman*, 882 N.E.2d at 264-65 (citation omitted). And as with adverse possession, each element must be shown, and failure to establish any one element will cause a prescriptive-easement claim to fail. *Id.*

Flick argues that Reuter's use of the land was permissive until 2010, when he purchased it. In response, Reuter points to her sworn statement that "she never requested permission from [the Hesses] to [use the land], assuming that she had the right to do so." Appellee's Br. p. 11 (citing Appellant's App. p. 117).

Even if Reuter never asked for permission, that does not mean her use was adverse. Rather, the evidence suggests that Reuter never asked permission because she did not need to—the Hesses let her live on their land and use it as she deemed fit because she was a family member. In a similar situation involving family members, our Supreme Court found "implied permission grounded in the cordial relationship between [two] families." *Wilfong*, 838 N.E.2d at 407 (noting the "goodwill" and "very cordial

16

relationship" between two families and finding permissive rather than adverse use). And before *Wilfong*, this Court found implied permission where there was evidence of a friendly relationship between two sisters. *See Searcy v. LaGrotte*, 175 Ind. App. 498, 372 N.E.2d 755 (1978).

Moreover, this Court has held that "an adverse claimant must produce evidence that he or she actually communicated, either explicitly or implicitly, to the servient owner that he or she was using the disputed property under a claim of right . . . ." *Whitman*, 882 N.E.2d at 269. Reuter did not produce such evidence, and as noted above, the circumstances of her use before Flick's arrival show that her use was permissive. Therefore, Flick, not Reuter, was entitled to summary judgment on this issue.[8] *See Bass v. Salyer*, 923 N.E.2d 961, 967 (Ind. Ct. App. 2010) ("If the facts and circumstances of a case lead to the conclusion that the use[ ] was merely permissive, they are fatal to the prescription.") (citation omitted).

## V. Trespass

Because we conclude that the trial court erred in granting summary judgment for Reuter, we also reverse the court's finding that Flick committed trespass. Although trespass is based on possession, not ownership, trespass requires a finding that the trespasser entered the land without a legal right to do so. *See Garner v. Kovaliak*, 817

---

[8] Reuter may have another easement claim, however. An individual may establish the existence of an implied easement of necessity by showing that (1) there was common ownership at the time the estate was severed; (2) that the common owner's use of part of his land to benefit another part was apparent and continuous; (3) the land was transferred; and (4) at severance it was necessary to continue the preexisting use for the benefit of the dominant estate. *Reed v. Luzny*, 627 N.E.2d 1362, 1364 (Ind. Ct. App. 1994), *reh'g denied, trans. denied*. Reuter may have an implied-easement-of-necessity claim with respect to her use of Flick's well. This issue should be addressed on remand.

N.E.2d 311, 314 (Ind. Ct. App. 2004).  There has been no such showing.  The trial court erred when it concluded that Flick committed trespass.

## IV. **Appellate Attorney's Fees**

Finally, we address Reuter's request for appellate attorney's fees.  Our appellate rules authorize us to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith.  Damages shall be in the Court's discretion and may include attorney's fees."  Ind. Appellate Rule 66(E).  Damages will be assessed only where an appellant, acting in bad faith, maintains a wholly frivolous appeal.  *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010).  While Appellate Rule 66(E) allows us to award damages on appeal, we must act with extreme restraint in this regard due to the potential chilling effect on the exercise of the right to appeal.  *Id.*  "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious."  *Id.*

To prevail on her claim, Reuter must show that Flick's arguments on appeal are "utterly devoid of all plausibility."  *Bergerson v. Bergerson*, 895 N.E.2d 705, 716 (Ind. Ct. App. 2008) (citations omitted).  As Flick's appellate arguments have prevailed, we cannot say Reuter has met her burden.  We therefore deny her request for appellate attorney's fees.

Reversed in part, affirmed in part, and remanded for further proceedings.

RILEY, J., and MAY, J., concur.