**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 14 2015, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JOSEPH C. KLAUSING**
**STEPHANIE L. CALDWELL**
O'Bryan, Brown & Toner, PLLC
Louisville, Kentucky

ATTORNEY FOR APPELLEES:

**JOHN A. KRAFT**
Young, Lind, Endres & Kraft
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CELEBRATION WORSHIP CENTER, INC., | ) | |
| | ) | |
| Appellant/Plaintiff/ Counter-Claim Defendant, | ) ) | |
| | ) | |
| vs. | ) | No. 22A01-1405-PL-229 |
| | ) | |
| PATRICK TUCKER and CAROLYN P. TUCKER a/k/a PATTY TUCKER, | ) ) | |
| | ) | |
| Appellees/Defendants/ Counter-Claim Plaintiffs. | ) ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable J. Terrence Cody, Judge
Cause No. 22C01-1106-PL-948

**January 14, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On June 30, 2011, Appellant/Plaintiff/Counter-Claim Defendant Celebration Worship Center, Inc. ("CWC") filed a complaint seeking a declaratory judgment against the Appellees/Defendants/Counter-Claim Plaintiffs Patrick and Carolyn P. Tucker (collectively, the "Tuckers"), regarding a land dispute. Specifically, CWC sought a declaration that it was the rightful owner of certain real property. For their parts, the Tuckers argued that they had either acquired ownership of the land at issue by means of adverse possession or had a prescriptive easement over the land in question. After the parties filed competing motions for summary judgment, the trial court granted summary judgment in favor of the Tuckers on both the adverse-possession and prescriptive-easement claims. Because we conclude that the trial court erred in granting summary judgment in favor of the Tuckers and that summary judgment should have instead been granted in favor of CWC in both regards, we reverse and remand to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

The instant matter involves a land dispute over a portion of Plat 349, Lot Three ("the land at issue") located in Floyd County. CWC claims that it is the rightful owner of the land at issue. The Tuckers claim that they have acquired ownership of the land at issue by means of adverse possession. Alternatively, the Tuckers argue that they have acquired a prescriptive easement for use of the land at issue.

On June 30, 2011, CWC filed a complaint seeking declaratory judgment against the Tuckers with regards to the parties' land dispute. On August 15, 2011, the Tuckers filed a

2

counterclaim against CWC in which they claimed that they had either acquired of the land at issue by means of adverse possession or had acquired a prescriptive easement over the land at issue. The parties subsequently filed competing motions requesting summary judgment. The trial court conducted a hearing on the parties' summary judgment motions on June 25, 2013. On July 16, 2013, the trial court issued an order in which it denied CWC's motion for summary judgment and granted summary judgment in favor of the Tuckers on both the adverse-possession and prescriptive-easement claims. The parties have subsequently filed numerous motions to correct error and for clarification. CWC appeals following the trial court's denial of its most recent motion.

## DISCUSSION AND DECISION

CWC contends that the trial court erred in granting summary judgment in favor of the Tuckers on the theories of adverse possession and creation of a prescriptive easement.

### I. Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 887 (Ind. Ct. App. 2002).

> When reviewing the grant or denial of a motion for summary judgment "we stand in the shoes of the trial court." *City of Gary v. Ind. Bell Tel. Co.*, 732 N.E.2d 149, 153 (Ind. 2000).… "In reviewing cross-motions for summary judgment, we consider each motion separately." *Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 253 (Ind. 2013). Where, as here, the dispute is one of law rather than fact, our standard of review is de novo. *See Spangler v. Bechtel*, 958 N.E.2d 458, 461 (Ind. 2011). Further, the trial court in this case entered findings of fact and conclusions of law, "neither of

3

which are required nor prohibited in the summary judgment context." *City of Gary*, 732 N.E.2d at 153. "Although specific findings aid our review of a summary judgment ruling, they are not binding on this Court." *Id*. Finally, "we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence." *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009).

*Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014).

> A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id*. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. [*Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 706 (Ind. Ct. App. 1999)] (quoting *Barnes v. Antich*, 700 N.E.2d 262, 264-65 (Ind. Ct. App. 1998)).

*Heritage Dev.*, 773 N.E.2d at 888.

## II. Adverse Possession

### A. Historical Overview of Law Relating to Adverse Possession

In *Fraley v. Minger*, 829 N.E.2d 476 (Ind. 2005), the Indiana Supreme Court set forth

a detailed history of the theory of adverse possession. Specifically, the Indiana Supreme

Court stated:

> The common law doctrine and application of adverse possession has a long history. As early as 2250 B.C. the Code of Hammurabi discussed adverse possession and the misuse of land, including provisions that punished land waste, rewarded long-term development, and allowed one who worked the land of another for three years to take and keep the land. *See* Brian Gardiner, Note, *Squatters' Rights and Adverse Possession*, 8 Ind. Int'l & Comp. L. Rev. 119, 123 (1997) (hereafter "Gardiner"); John G. Sprankling, *An Environmental*

4

*Critique of Adverse Possession*, 79 Cornell L. Rev. 816, 821 n. 17 (1994) (hereafter "*Critique*"). In England, the history of adverse possession can be traced back to the Norman Conquest in 1066. *See* Gardiner at 125. The common law doctrine of adverse possession was applied to resolve land disputes between colonists in Virginia as early as 1646, where it was used "in an effort to help resolve the proverbial conflicts between speculators and squatters." *Critique* at 823 n. 29. The first statutory recognition of adverse possession in the New World appeared in a 1715 statute of limitations in North Carolina. Jeffry M. Netter, et al., *An Economic Analysis of Adverse Possession Statutes*, 6 Int'l Rev. L. & Econ. 217, 219 (1986) (hereafter "Netter").

With the western migration of pioneers, the federal government initially prohibited settlement of the western lands unless purchased from the government, but that requirement was gradually relaxed; anti-squatting prohibitions were abandoned, recognition of preemptive purchase rights were extended, and land was distributed to military veterans. *See* John G. Sprankling, *The Antiwilderness Bias in American Property Law*, 63 U. Chi. L. Rev. 519, 528-29 (1996). Eventually, with the 1852 passage of the Homestead Act, land was freely available to such settlers. *Id.* At the same time, whereas the courts had originally followed the English example of requiring that the adverse possesser engage in activities giving notice to an inspecting owner such as residence, cultivation, fencing, and other improvements, American courts began to focus upon acts by the adverse possessor in keeping with the nature and character of the land involved. *Id.* at 538-39. The policy behind favoring adverse possession was the same as that of land distribution: favoring the productive use of the land. *Id.* at 534-40; *see also* Netter at 219 (adverse possession rewards the use of land and punishes those who sit on their rights).

Claims of adverse possession were litigated in Indiana from the early years of statehood. In *Doe v. West*, 1 Blackf. 133, 135 (Ind. 1821), the Court observed that "[i]n England, and in some of our sister States, it has been decided that 20 years' peaceable possession gives a right which is sufficient to maintain ejectment." The common law doctrine of adverse possession received legislative approval in Indiana with the enactment of specific 20-year statutes of limitation in 1820 and again in 1823. *Id.* at 136 ed. n. 1. In 1853, this Court stated that for a claim of title based in adverse possession to defeat a legal title to property, "strict proof must be made not only that the possession was, from its inception, under a public claim of title adverse to that of the real owner, but that both such claim and possession have been continuous and uninterrupted ... through the full period of twenty years." *Doe v. Brown*, 4 Ind. 143, 145 (Ind. 1853). In 1951, the General Assembly demonstrated its continued approval of the doctrine by shortening the applicable statute of limitations from twenty years to ten years. *See* Acts of 1951, ch. 301, § 2; *see also Phar-Crest Land Corp. v. Therber*, 251 Ind. 674, 683-684, 244 N.E.2d

644, 649 (Ind. 1969) (Hunter, J., concurring); *Berrey v. Jean*, 401 N.E.2d 102, 104-105 (Ind. Ct. App. 1980).

During the latter nineteenth century, many of the Indiana adverse possession cases began to articulate specific elements required to establish adverse possession. *See, e.g., Hargis v. Inhabitants of Congressional Township*, 29 Ind. 70, 71 (Ind. 1867) (requiring the claimant be "in actual, open, notorious, and exclusive possession thereof, claiming to be the owner in fee."). A relatively consistent list of similar elements of common law adverse possession developed and is found thereafter even in more recent cases. Citing *Penn Central Transportation Co. v. Martin*, 170 Ind. App. 519, 353 N.E.2d 474 (1976), the parties each assert that to establish title by adverse possession, the claimant has the burden of proving the possession was: (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for the statutory period. Brief of Appellant Fraley at 5, Brief of Appellees Minger at 4. *See also Marengo Cave Co. v. Ross*, 212 Ind. 624, 630, 10 N.E.2d 917 (Ind. 1937). Later cases from this Court have used a slightly different formulation that omits "visible" and "hostile" but adds "adverse," and substitutes "claim of right" for "claim of ownership." This Court's opinions in *Beaver v. Vandall*, 547 N.E.2d 802, 804 (Ind. 1989), and *McCarty v. Sheets*, 423 N.E.2d 297, 300 (Ind. 1981), state that adverse possession is established by "open, continuous, exclusive, adverse and notorious possession of property under a claim of right for the statutory period." As authority for this statement, *McCarty* cited *Worthley v. Burbanks*, 146 Ind. 534, 45 N.E. 779 (1897). But *Worthley* lists the "five indispensable elements" of adverse possession as "1, It must be *hostile and under a claim of right*; 2, it must be *actual*; 3, it must be *open and notorious*; 4, it must be *exclusive*; and 5, it must be *continuous*." 146 Ind. at 539, 45 N.E. at 781 (emphasis in original). Emphasizing that the nature and situation of the disputed land must be taken into consideration, *Worthley* cites the following as a generally accepted proposition:

> An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, *exercising those acts of ownership usually practiced by owners of such land, and using if for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims*, is sufficient to make the possession adverse.

146 Ind. at 543, 45 N.E. at 782 (quoting *Collett v. Board*, 119 Ind. 27, 34, 21 N.E. 329, 331 (1889) (emphasis added in *Worthley*)).

In addition to *Worthley*, many other early Indiana cases recognized that a person may claim adverse possession based solely upon entry and actual possession of land, without any initial claim of color of title. *See Bell v. Longworth*, 6 Ind. 273, 276-77 (1855); *Vancleave v. Milliken*, 13 Ind. 105

(1859); *May v. Dobbins*, 166 Ind. 331, 333-34, 77 N.E. 353, 354 (Ind. 1906); *Martin*, 170 Ind. App. at 524, 353 N.E.2d at 477; *Swanson v. New York Central R.R. Co.*, 83 Ind. App. 580, 583, 149 N.E. 353, 354 (1925). It is not necessary that possession be under color of title; what is required is claim of right. In *May v. Dobbins*, 166 Ind. at 333, 77 N.E. at 354, this Court rejected an instruction "which stated that if appellant took possession of the land without color of title, and knew or had reason to believe who the rightful owner was, his occupancy would not be such good-faith occupancy under claim of ownership as would confer title, however long continued." *Id*. The Court recognized that such an instruction "accords with good morals, but it is not sound in law." *Id*. "The acquisition of title by adverse possession is predicated upon the statute of limitations, and the running of the statute may be instituted without even color of title, and without reference to the good or bad faith of the adverse claim asserted by the occupant." *Id.*; *see also Moore v. Hinkle*, 50 N.E. 822, 824, 151 Ind. 343, 347-48 (1898). Where one enters the land with the intention of asserting ownership and possesses the land openly and exclusively, exercising the usual acts of ownership upon the land for the full time under the statute of limitations, title will pass to the possessor. *May*, 166 Ind. at 334, 77 N.E. at 354-55. While cases listing the elements of adverse possession frequently recite that the adverse claimant must occupy the land under a claim of right, that claim of right can be established by entering upon and occupying land with the intent to hold the land as one's own. *See Martin*, 170 Ind. App. at 524, 353 N.E.2d at 477. The *Martin* court succinctly stated that a "claim of right may be inferred in favor of the party in possession" where the party uses the land "in the same manner that an owner ordinarily uses his land." *Id*. (citing *Swanson v. New York Central R.R. Co.*, 83 Ind. App. 580, 583, 149 N.E. 353, 354 (1925)); and *Abel v. Love*, 81 Ind. App. 328, 337, 143 N.E. 515, 518 (1924).

*Fraley*, 829 N.E.2d at 483-86 (Ind. 2005) (footnotes omitted).

## B. Current Law Relating to Adverse Possession

In *Fraley*, the Indiana Supreme Court rephrased the elements of adverse possession and reiterated that adverse possession requires clear and convincing proof of control, intent, notice, and duration. *Flick v. Reuter*, 5 N.E.3d 372, 379 (Ind. Ct. App. 2014) (citing *Fraley*, 829 N.E.2d at 486), *trans. denied*; *see also Hoose v. Doody*, 886 N.E.2d 83, 92 (Ind. Ct. App. 2008), *trans. denied*. Specifically, the Indiana Supreme Court rephrased the elements of

7

adverse possession to read as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Flick*, 5 N.E.3d at 379 (quoting *Fraley*, 829 N.E.2d at 486). These elements must be satisfied for the statutory period of ten years. *Hoose*, 886 N.E.2d at 92. An adverse-possession claim will fail if any of the required elements are not proven. *Flick*, 5 N.E.3d at 380 (citing *Altevogt v. Brand*, 963 N.E.2d 1146, 1152 (Ind. Ct. App. 2012).

Indiana Code section 32-21-7-1, which was first enacted by the Indiana General Assembly in 1927, imposes an additional requirement for adverse possession.[1] *Fraley*, 829 N.E.2d at 829; *Flick*, 5 N.E.3d at 380. In order for one to acquire title by means of adverse possession, Indiana Code section 32-21-7-1 requires the adverse possessor to pay and discharge "all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." Ind. Code § 32-21-7-1(a). Indiana Code section

---

[1] The statute was enacted following "'great agitation in the northern part of the state caused principally by 'squatters' who were obtaining original titles to land" that belonged to a number of large corporations by means of adverse possession. *Fraley*, 829 N.E.2d at 488 (quoting James H. Neu, *Adverse Possession in*

8

32-21-7-1 "does not relieve any adverse possessor from proving all the elements of title by adverse possession required by law." Ind. Code § 32-21-7-1(a).

### C. Analysis

In *Fraley*, the Indiana Supreme Court held that the trial court erred in determining that the Mingers had obtained ownership of certain real property by means of adverse possession. 829 N.E.2d at 493. In reaching this holding, the Indiana Supreme Court noted that the trial court "made no finding that the Mingers paid, intended to pay, or believed that they were paying, the taxes on the disputed tract." *Id*. The Indiana Supreme Court further noted that "[t]here is no finding that during the period of adverse possession the Mingers 'paid and discharged all taxes and special assessments of every nature falling due on such land' as required by the adverse possession tax statute, nor is there a finding of substantial compliance." *Id*.

In *Flick*, we concluded that the trial court erred in granting summary judgment to Reuter on Reuter's adverse possession claim because there was no evidence that Reuter paid taxes on the land in question. 5 N.E.2d at 381. We therefore concluded that "Flick, not Reuter, was entitled to summary judgment on this issue." *Id*. Furthermore, in *Hoose*, we concluded that the Hooses' claim that they had acquired certain real property by means of adverse possession failed because the Hooses had failed to establish that they had paid property taxes on the land in question or had a reasonable good faith belief that the property in question was exempt from property taxes. 886 N.E.2d at 93.

Similarly, in the instant matter, the designated evidence fails to prove that the Tuckers

---

*Indiana*, 16 Notre Dame Lawyer 216, 219 (1941)).

paid taxes on the land at issue. The land at issue was located in Lot Three. Tax records and property assessments dating from 2005 to 2011 explicitly set forth the value and tax rate of Lot Four. While the tax records indicate that the Tuckers paid property taxes on Lot Four, none of these documents contain any reference to Lot Three. Further, the Tuckers acknowledged that the relevant property tax documents did not indicate that they had paid any taxes on the land at issue. The Tuckers did not designate any evidence which establishes that they had paid taxes on the land in question or that they had a reasonable good faith belief that the land in question was exempt from property taxes.

Again, summary judgment is only appropriate when the moving party affirmatively shows that there are no genuine issues of material fact with regard to a particular issue or claim. *Flick*, 5 N.E.2d at 379. As such, the Tuckers were only entitled to summary judgment on their adverse possession claim if they showed that there were no issues of material fact regarding the elements of control, intent, notice, and payment of taxes for the required ten-year period. *See id*. at 380. CWC argues that the trial court erred in awarding summary judgment to the Tuckers in this regard because the designated evidence does not prove that the Tuckers paid property taxes on the land at issue for the required ten-year period. We agree. Because the designated evidence demonstrates that the Tuckers did not pay the taxes on the parcel of land at issue for the required ten-year period, we conclude that the trial court erred in granting summary judgment in favor of the Tuckers.[2] We further conclude that

---

[2] The Tuckers make reference to the fact that they, as well as their predecessor in interest, paid taxes on an old garage before it was torn down in 2003 or 2004. This fact, however, is irrelevant to the question of whether the Tuckers paid taxes on the land at issue, which again was located on Lot Three, because it is undisputed that the old garage was located on Lot Four, *i.e.*, the Tuckers' lot, and nothing in the record

10

CWC, not the Tuckers, was entitled to summary judgment on this issue.

### III.  Prescriptive Easement

### A.  Law Relating to Prescriptive Easements

The law disfavors prescriptive easements.  *Id*. at 381 (citing *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind. 2005).  "For this reason, the party claiming a prescriptive easement must meet stringent requirements."  *Id*. (citing *Wilfong*, 838 N.E.2d at 406).

> Like with adverse possession, a party claiming the existence of a prescriptive easement "must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration."  *Whitman v. Denzik*, 882 N.E.2d 260, 264-65 (Ind. Ct. App. 2008).  In other words, *Fraley's* adverse-possession reformulation applies to prescriptive easements.  *Wilfong*, 838 N.E.2d at 406.  There must be evidence of "an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right."  *Whitman*, 882 N.E.2d at 264-65 (citation omitted).

*Id*. at 381-82.  "For the element of intent to be satisfied, the party claiming a prescriptive easement must demonstrate intent to claim the right to use the portion of land for a specific purpose."  *Sagarin v. City of Bloomington*, 932 N.E.2d 739, 747 (Ind. Ct. App. 2010), *trans. denied*.  "And as with adverse possession, each element must be shown, and failure to establish any one element will cause a prescriptive-easement claim to fail."  *Flick*, 5 N.E.3d at 382.  In addition, we have held that "'an adverse claimant must produce evidence that he or she actually communicated, either explicitly or implicitly, to the servient owner that he or she was using the disputed property under a claim of right....'"  *Id*. at 382 (quoting *Whitman*, 882 N.E.2d at 269).  Generally, "[t]he existence or non-existence of a prescriptive easement is a question of fact for the trier of facts."  *Searcy v. LaGrotte*, 175 Ind. App. 498, 501, 372

---

indicates that any part of the old garage was located on any part of Lot Three.

11

N.E.2d 755, 757 (1978).

## B. Analysis

Again, to establish a prescriptive easement, the claimant must use or exercise control of the land for a specific purpose for a period of twenty years. *See Hoose*, 886 N.E.2d at 94. "The acquisition of a prescriptive easement may be defeated by a showing that the use was not continuous and uninterrupted for the necessary twenty year period. Either an interruption from an act of the owner of the servient estate or a voluntary abandonment by the adverse user may prevent the easement from ripening." *Bromelmeier v. Brookhart*, 570 N.E.2d 90, 92 (Ind. Ct. App. 1991). "[M]ere intermissions in use of reasonable duration do not present acquisition of an easement." *Id*. "Abandonment denotes the subjective element of intent as well as mere nonuse." *Id*. "Furthermore, while enjoyment of an easement will not be extended by implication … the proper function of a particular easement should be determined by the purpose it is intended to serve." *Id*. (internal citation omitted).

The Tuckers claim that their predecessor-in-interest had used the land in question for a specific purpose, *i.e.*, as a primary form in ingress to and egress from the old garage, for a period of more than twenty years. However, at the time they claimed the prescriptive easement in the land at issue, it is undisputed that the garage no longer existed, but rather had been torn down by the Tuckers in either 2003 or 2004. Upon tearing down the old garage, the Tuckers built a new garage. The new garage, however, does not require use of the land at issue as it has direct access to a public roadway. As such, the Tuckers need not use the land in question as their primary form of ingress to and egress from the new garage. Thus, even

12

assuming that the Tuckers could prove an actual, hostile, open, notorious, continuous, uninterrupted adverse use for a specific purpose for a term of twenty years, as of 2003 or 2004 when the Tuckers tore down the old garage, the Tuckers no longer used the land in question for the stated specific purpose.

The designated evidence indicates that the Tuckers voluntarily abandoned the previously-stated specified purpose for using the land in question, *i.e.*, as a primary means of ingress to and egress from their old garage, when they tore down the old garage in 2003 or 2004, and constructed a new garage that had direct access to a public roadway. Thus, even if the Tuckers could previously have satisfied their burden of proving each of the elements necessary to obtain a prescriptive easement, we conclude that by voluntarily abandoning the specified particular use for the land at issue, the Tuckers have voluntarily abandoned any prescriptive easement that may have previously existed. We therefore further conclude that the trial court erred in granting summary judgment in favor of the Tuckers on their prescriptive-easement claim. In light of the Tuckers' voluntary abandonment of the specified purpose for the claimed prescriptive easement, CWC, not the Tuckers, was entitled to summary judgment on this issue.

## CONCLUSION

In sum, we conclude that the trial court erred in granting summary judgment in favor of the Tuckers on both their adverse-possession and prescriptive-easement claims. We further conclude that CWC, not the Tuckers, was entitled to summary judgment on each of these claims. As such we remand the matter to the trial court with the instruction to enter

13

summary judgment in favor of CWC on both the Tuckers' adverse-possession and prescriptive-easement claims.

The judgment of the trial court is reversed and remanded to the trial court with instructions.

NAJAM, J., and MATHIAS, J., concur.